361 So.2d 769 (1978)
LAKE GATEWAY MOTOR INN, INC., Associated Inns and Restaurants Company of America, Bruce W. Mylrea and William W. Perrett, Appellants,
v.
MATT's SUNSHINE GIFT SHOPS, INC. and Ronald E. Dowdy, Appellees.
Ronald E. DOWDY, Appellant,
v.
MATT'S SUNSHINE GIFT SHOPS, INC., Lake Gateway Motor Inn. Inc., a Florida Corporation, Bruce M. Mylrea, Individually, Associated Inns and Restaurants Company of America, an Ohio Corporation, William W. Perrett, Individually, Appellees.
Nos. 77-1192 and 77-1211.
District Court of Appeal of Florida, Fourth District.
July 12, 1978.
Rehearing Denied September 7, 1978.
*770 Ernest J. Rice and James M. Spoonhour of Lowndes, Peirsol, Drosdick & Doster, P.A., Orlando, for appellants  Lake Gateway Motor Inn, Inc., Associated Inns & Restaurants Co. of America, Bruce W. Mylrea and William W. Perrett.
John Motsinger, Jr. and Michael G. Williamson of Johnson, Motsinger, Trismen & Sharp, P.A., Orlando, for appellant  Ronald E. Dowdy.
Melvin Pearlman, Winter Park, for appellee  Matt's Sunshine Gift Shops, Inc.
LETTS, Judge.
A major motel (and the individual defendants in the court below) here appeal an adverse money judgment in favor of the former operator of its, on the premises, gift shop, the jury award predicated upon a tortious interference by the motel of a business relationship between the former operator and his successor operator. The award likewise found a tortious interference of an advantageous business relationship between the motel and the former operator, such tort committed by the successor operator. We reverse.
The initial 15 year lease between the motel and the former operator required the latter to construct, operate and maintain a gift shop "at all times in a first class manner as befitting to a first class motel." The lease provided for cancellation for cause, in the event of any default and also provided, in clause 10, for cancellation for any reason whatsoever, upon thirty days notice. Said latter provision stated in part:
10. At the option of the lessor this lease may be terminated upon one (1) month's written notice to lessee with the following provisions for compensation to the lessee... .
The former operator ran the gift shop for approximately 16 months, but from the very first, innumerable alleged short comings and slip shoddings in the operation were cited by the motel, both orally and in writing. These culminated in a written cancellation of the lease, for cause, setting forth a myriad of violations running the gamut from the premises being "very dirty" all the way to hotel guests frequently being insulted by rude employees.
Thereafter, by letter, the former operator requested a reprieve, stating that many of the cited inadequacies had been corrected or were in the process of being corrected. Further discussions ensued, resulting in the motel agreeing to a "60 day trial period ending November 12, 1974." This trial period, contained in a letter, included a long list of instructions on how to satisfy the motel in its desire to maintain "a first class gift shop as a service to our guests and not as a profit center of the motel." The same letter concluded as follows:
Please indicate by signing below and returning a copy to me if you are willing to live up to the above specifications of a "First Class Operation." If you have any questions, please get in touch with me immediately.
*771 The former gift operator refused to sign and never did so, however, he remained as lessee, largely unchallenged, for a further eight months, at which time the motel again terminated the lease, this time pursuant to clause 10, that is, the 30 day right to terminate, for any reason whatsoever. The motel in an exchange of letters also said:
We have exercised our right to terminate your lease for several reasons. While you have generally complied with the terms of our agreement, it has been our feeling that the shop could be operated in a more satisfactory manner to best serve the needs of the Sheraton's guests. Specifically we have felt that improvements should have been made in regard to hours of operation and merchandise offered for sale.
Finally, amid the back and forth dialogue about the required reimbursements to the dismissed operator under the terms of the lease, if terminated without cause, the motel and the former operator arrived at the apparently uncontroverted figure of $12,920.78, which was tendered to the former operator by check and duly cashed.
We first addressed ourselves to the question of the motel tortiously interfering with an advantageous business relationship between the former gift shop operator and his successor who took over the business.
To be actionable, tortious interference requires (1) the existence of an advantageous business relationship under which the plaintiff has legal rights, (2) an intentional and unjustified interference with that relationship by the defendant, and (3) damage to the plaintiff as a result of the breach of the business relationship. Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA 1971).
The tortious interference claimed here was that before the former operator received his final irrevocable notice of termination, he was trying to negotiate a sale of his gift shop operation to his successor, but that these negotiations collapsed because the motel was also talking to the same successor about how the latter could take over the gift shop by merely paying the sum to the motel that it, in turn, was required to pay the former operator pursuant to the "buy out" clause 10 of the lease, if same were terminated without cause.
Assuming the facts in the immediately preceding paragraph to be undisputed, we do not find any evidence that such a course of action by the motel was unjustified nor do we find any competent evidence that it interfered with any advantageous business relationship.
The motel had the unquestioned right to terminate the lease without any justification whatsoever and as such would have to have an equally unquestioned right to talk to prospective successors both before and after announcing the termination.[1] The evidence only shows that the motel spoke to the successor before termination, citing as the initial cost to the successor, the sum necessary to pay off the former operator under the terms of the "buy out." We see nothing wrong with this. To suggest that any landlord is not justified to negotiate for a new tenant before exercising an unbridled right to evict an old one would defy all logic and create commercial chaos. Had the successor operator definitely arranged to pay his predecessor $75,000 only to have the motel tell him, "Don't pay that, we'll give it to you for $13,000.00," then we might be otherwise disposed. However, there was no evidence of any such agreement between the two operators, nor any evidence to show that the motel even knew the former operator was trying to make such an agreement. Further, the lease specifically prohibited the former operator from any assignment thereof without consent.
Moreover, there is also no evidence that an advantageous business relationship ever actually existed between the former operator and his successor. We are aware that a valid advantageous business *772 relationship may exist without the presence of an actual enforceable contract. Smith v. Ocean State Bank, 335 So.2d 641 (Fla. 1st DCA 1976). However, there must be some attendant legal rights. Symon v. J. Rolfe Davis, supra. We do not find any evidence of any legal rights in existence between the two operators. A mere offer to sell a business which the buyer says he will consider, does not by itself give rise to legal rights which bind the buyer or anyone else with whom he deals.
As such there is no proof that the actions of the motel were the proximate cause of the former operator failing to make a deal with his successor. Seaway Yacht Sales, Inc. v. Brunswick Corporation, 242 So.2d 192 (Fla. 3d DCA 1970).
Passing next to the alleged tortious interference by the successor operator of an advantageous business relationship between the motel and the former operator, we likewise find no evidence to sustain such.
It is true that the relationship was advantageous to the former gift shop operator since he was showing a small profit, but we can not find the successor's behavior to be actionable. Assuming all alleged actions of the successor were as bad as the appellee paints them, (although this is disputed) said successor went to the motel and solicited a take over of the gift shop, having heard it was to be available. Such competition seems to us to be par for the course in the free enterprise system. Can not the IBM salesman solicit this court to change over from a Xerox copier? Of course he can, unless he suggests to us that we violate a contract with Xerox in so doing.
In the case at bar, there is no proof that the successor operator sought to persuade the motel to break a contract or strip his predecessor of some legal rights. The lease had a 30 day cancellation clause for any reason whatsoever and under the terms of the new agreed changeover the new operator was to pay all sums due to his predecessor under clause 10. Ergo, he was to personally ensure that the former operator did, in fact, receive all the legal rights that he had coming, before the new operator could take over.
Moreover, we question if the relationship was mutually advantageous. The stated purpose of the motel was to have a gift shop as a service to its guests, and the guests were complaining mightily about the service.[2] As was stated in the Seaway v. Brunswick case, supra,
... there is ample, undisputed evidence as to both personality clashes and business problems to justify [motel] in cancelling the contracts. There was evidence that these problems had been resolved, but that does not negate their existence in the first place, nor does such evidence, even when combined with negotiations between [motel] and another [gift shop operator] rise to the level of showing bad faith or willfulness which was the substance of [the] allegations in the complaint.
We therefore conclude that the lower court erred in failing to direct a verdict in favor of all the defendants and also obviously erred in permitting the issue of punitive damages.
Likewise, if the underlying tort which forms the basis for a civil conspiracy is not proved, then there can be no recovery for the alleged conspiracy itself. See Robertson v. Industrial Insurance Company, 75 So.2d 198 (Fla. 1954).
Finally we are of the view that our opinion successfully disposes of the cross appeal.
THIS CAUSE IS REVERSED AND THE CASE REMANDED FOR THE ENTRY OF A JUDGMENT IN ACCORDANCE HEREWITH.
DOWNEY, C.J., and MOORE, J., concur.
NOTES
[1] The successor operator sought out the motel about the availability of the shop, not vice versa.
[2] The lease with the successor provided for essentially the same rent.