Fred L. AHERN, A.L. Outlaw,
Plaintiffs-Appellants,

v.

BOEING COMPANY, a foreign corporation, Defendant-Appellee.

No. 82–3001
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 25, 1983.

Robert C. Gobelman, P.A., Jacksonville, Fla., for plaintiffs-appellants.

George L. Hudspeth, Jacksonville, Fla., for defendant-appellee.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellants appeal from summary judgment granted to appellee by the district court. We conclude that the district court, 539 F.Supp. 1210, applied an incorrect legal standard to the facts of this case; therefore we reverse and remand for trial on the merits.

In 1976, "A & O," a partnership in which appellants were partners, entered into an agreement with Scientific Energy Engineering, Inc., ("SEE") covering the testing, production, sales, and leasing aspects of an incinerator device. A prototype of the incinerator was installed for testing on appellants' property. In May 1977, the agreement was modified to grant appellants the exclusive marketing rights to the incinerator. The agreement as modified did not contain an express durational provision, but did contain references to termination upon default of either of the parties.

SEE and A & O subsequently experienced some difficulties in their relationship, and SEE filed a state court action in September 1978, seeking declaratory relief and damages. While the state action was pending, SEE entered into negotiations with Boeing Company regarding the incinerator. On June 7, 1979, Boeing executed an option agreement with SEE and its principals, which gave Boeing an option to acquire the marketing rights to the incinerator and other products. Boeing exercised the option and on February 14, 1980, Boeing, SEE, and its principals entered into a marketing agreement. Appellants contend that this agreement directly interfered with the exclusive marketing rights that SEE had granted them.

On April 24, 1980, the state trial court entered a final declaratory judgment and declined to award SEE damages. The court found that the joint venture agreement granted certain marketing rights to the appellants, but that the contract was terminable at will by either party upon thirty days notice. Shortly after the state court judgment was entered and after the contract with Boeing had taken effect, SEE notified the appellants that it was terminating the marketing agreement with A & O. Appellants then filed this action in Florida state court seeking compensatory and punitive damages against Boeing for alleged tortious interference with the business relationship between A & O and SEE. The case was removed to federal district court pursuant to 28 U.S.C. §§ 1332 and 1441. After discovery was concluded, Boeing moved for summary judgment, and the district court granted the motion.

Under Florida law, to establish a cause of action for tortious interference, a party must demonstrate:

1. the existence of an advantageous business relationship under which that party has legal rights;
2. an intentional and unjustified interference with that relationship by the defendant; and
3. damage to the plaintiff as a result of the interference with the business relationship.

*Unistar Corporation v. Child,* 415 So.2d 733, 734 (Fla. 3d Dist.Ct.App.1982); *Wackenhut Corporation v. Maimone,* 389 So.2d 656, 657 (Fla. 4th Dist.Ct.App.1980); *Lake Gateway Motor Inn v. Matt's Sunshine Gift Shops, Inc.,* 361 So.2d 769, 771 (Fla. 4th Dist.Ct. App.1978). The Florida courts have determined that "an action will lie where a party tortiously interferes with a contract terminable at will." *Unistar Corporation,* 415 So.2d at 734. Thus, where the plaintiff shows "an intentional and unjustified interference with an existing business relationship which causes damage to the plaintiff," a prima facie case is established, and the burden then shifts to the defendant to justify its actions. *Id.* at 734–35. "If the defendant can prove that the interference was lawful competition—a privilege which the courts recognize when the contract is terminable at will—the defendant will not be found to have committed the tort of wrongful business interference." *Id.* at 735 (citing *Insurance Field Services, Inc. v. White & White Inspection and Audit Service, Inc.,* 384 So.2d 303 (Fla. 5th Dist.Ct.App.1980); W. Prosser, *Handbook of the Law of Torts* § 129, at 932, 946 (4th ed. 1971)).

The district court focused upon this privilege of competition in granting Boeing's motion for summary judgment. The court found that Boeing was motivated by no ill will toward A & O, but only by competitive interests, a finding we do not dispute. The court, however, concluded that Florida law protects interference with at-will contracts as long as the motivation for that interference is deemed "proper." The trial court in its opinion and order granting summary judgment, stated:

that where, as here, there is a contract terminable at will and part of defendant's motivation for interfering with that contract was to advance defendant's business interests, the interference is privileged as competition and is therefore justified as a matter of law.

We believe that the judge erred in her reading of the Florida case law. In the recent trilogy of cases cited above, the Florida courts ruled that the plaintiffs had not established the requisite unjustified interference with their business relationships. In none of the cases did the defendant actually enter into a contract that interfered with the existing at-will contract of the plaintiff. In *Lake Gateway Motor Inn,* the plaintiff was a gift shop operator who had an at-will contract with the motel. The motel notified the plaintiff that it was exercising its rights to terminate the contract upon thirty days notice. The gift shop operator then negotiated with a possible successor, but that successor also held discussions with the motel. The successor found that the motel, would contract with him if he paid the motel the amount due the gift shop operator under the "buy-out" clause of the at-will contract. The court found no tortious interference because the successor and the motel had not entered into a contract interfering with the gift shop's operation. The privilege of competition, the court held, protects solicitation for future business, not interference with existing contracts. The court summarized its reasoning as follows:

Assuming all alleged actions of the successor were as bad as the appellee paints them, (although this is disputed) said successor went to the motel and solicited a take over of the gift shop, having heard it was to be available. Such competition seems to us to be par for the course in the free enterprise system. Can not the IBM salesman solicit this court to change over from a Xerox copier? *Of course he can, unless he suggests to us that we violate a contract with Xerox in so doing.*

*In the case at bar, there is no proof that the successor operator sought to persuade the motel to break a contract or strip his predecessor of some legal rights.*

*Lake Gateway Motor Inn,* 361 So.2d at 772 (emphasis added).

■ The district court concluded that the determining factor under Florida law is the motivation of the alleged tortfeasor. Motivation is *not,* however, the guiding star in the constellation of Florida's common law of tortious interference. The case law clearly demonstrates that mere self-interested and competitive solicitation will not constitute tortious interference with an at-will contract, so long as the third party does not induce the breach of or interference with that existing contract.

Viewing the facts in the light most favorable to the nonmoving party as we must in reviewing a grant of summary judgment, *Northwest Power Prods., Inc. v. Omark Indus., Inc.,* 576 F.2d 83, 85 (5th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979), we conclude that appellants have alleged a prima facie case showing that Boeing went much further than the mere solicitation that would be protected under Florida's privilege of competition. We hold, therefore, that appellants are entitled to present their case to a jury. The order of the district court granting summary judgment is REVERSED, and the case REMANDED for trial.