GEORGETOWN MANOR, INC., a Florida Corporation, Plaintiff–Counterclaim–Defendant–Appellee, Cross–Appellant,

George Levin, Plaintiff–Third Party Plaintiff–Third Party–Defendant,

Classic Motor Carriages, Inc., a Florida Corporation, Thomasville Showcase Interiors, Inc., a Florida Corporation, Furniture Industries of Florida, Inc., a Florida Corporation, Plaintiffs,

Joe Krau, Counterclaim–Defendant,

v.

ETHAN ALLEN, INC., a Delaware Corporation, Defendant–Counterclaim–Plaintiff–Third Party–Plaintiff–Appellant, Cross–Appellee,

Nathan Ancell, Defendant–Counterclaim–Plaintiff–Third Party–Plaintiff.

GEORGETOWN MANOR, INC., a Florida Corporation, Plaintiff–Counterclaim–Defendant–Appellant, Cross–Appellee,

George Levin, Plaintiff–Third Party–Defendant,

v.

ETHAN ALLEN, INC., a Delaware Corporation, Defendant–Counterclaim–Plaintiff–Third Party–Plaintiff–Appellee, Cross–Appellant,

Nathan Ancell, Defendant–Counterclaim–Plaintiff–Third Party–Plaintiff,

Joe Krau, Counterclaim–Defendant,

Classic Motor Carriages, Inc., a Florida Corporation, Thomasville Showcase Interiors, Inc., a Florida Corporation, Furniture Industries of Florida, Inc., a Florida Corporation, Third Party–Defendants.

Nos. 91–5343, 91–5600.

United States Court of Appeals, Eleventh Circuit.

May 28, 1993.

Ronald P. Weil, Weil, Robert Zarco, Lucio, Mandler, Croland & Steele, P.A., Miami, FL, Andrew L. Frey, Michael A. Vatis, Cynthia Tripi, Mayer, Brown & Platt, Washington, DC, for Ethan Allen, Inc.

Joel S. Perwin Podhurst, Orseck, Josepberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, for George Town Manor, Inc.

Before HATCHETT and BLACK, Circuit Judges, and DYER, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this appeal involving a claim for tortious interference with a business relationship, we affirm the district court's rulings on several issues and certify to the Supreme Court of Florida one issue regarding damages recoverable under Florida law.

## BACKGROUND

This appeal follows protracted litigation involving several claims and counterclaims between a furniture manufacturer, Ethan Allen, Inc. ("Ethan Allen"), and its former furniture dealer, Georgetown Manor, Inc. ("Georgetown"). The unraveling of the longstanding dealership relationship between Ethan Allen and Georgetown began in December, 1984, because of a dispute over Georgetown's credit for future furniture deliveries. On January 9, 1985, Georgetown informed Ethan Allen that it had decided to convert its five Ethan Allen galleries to Thomasville Furniture Industries, Inc. ("Thomasville") furniture outlets. Georgetown's owner, George Levin, formed a new corporation, Thomasville Showcase Interiors to operate the new Thomasville galleries at the old Georgetown locations. On January 11, 1985, Georgetown issued a press release announcing the conversion of its stores from Ethan Allen to Thomasville, stating that "Thomasville offers the best opportunities for our company as we look into the future." Georgetown also sent a letter to its past customers advising them of the conversion and announcing a conversion sale of the Ethan Allen furniture in stock.

On January 24, 1985, Ethan Allen's chairman of the board, Nathan Ancell, sent a memo to other Ethan Allen dealers stating that Georgetown owed $1.6 million as of May, 1984, and that Georgetown had allowed the bills to mount without proper payment even though Ethan Allen had been willing to help Georgetown recover. In addition, on February 3, 1985, Ethan Allen placed a one-day advertisement in several South Florida newspapers, stating:

Dear Valued Customer:

Ethan Allen recently announced a major change in the distribution in the Miami [or General Pompano] Area. Since this change affects you, our valued customer, I would like to explain the situation directly.

For about 20 years, Ethan Allen enjoyed a wonderful relationship with the Blau family who operated the Georgetown Manor stores in the Miami area.

Because of family illness, the business was sold to a new group. Financial problems developed and our bills were not paid. The debt rose to a high level and we could no longer deliver merchandise to them until the debt was reduced. Reluctantly, we then had to discontinue distribution of Ethan Allen by Georgetown completely. We, therefore, are presently opening new Ethan Allen galleries in this area to serve our many customers of long standing.

One of our fine dealer families in the area, Bob and Brenda Stacy, have established an Ethan Allen office in our present Ethan Allen Contemporary Gallery at 5070 N. Federal Highway, Lighthouse Point (Pompano). The phone number is 305–421–5300. This Gallery will soon become an Ethan Allen American Traditional Gallery. The Stacys will be opening other Ethan Allen Galleries very shortly to serve you.

Many Ethan Allen customers have unfilled orders with Georgetown Manor. We and the Stacys are very anxious to effect deliveries of these orders and can handle them very expeditiously.

Please contact Stacy's Service Center in Pompano and they will handle your inquiries and orders. Again, the number is 305–421–5300.

The new galleries will be called Ethan Allen Carriage House and will continue to bring you our beautiful furniture and professional services.

We are sorry about this disruption as we took great pains to avoid it.

We look forward to serving you again.

Nathan S. Ancell /s

Nathan S. Ancell

Chairman of the Board

Ethan Allen Inc.

Danbury, CT 06811

## PROCEDURAL HISTORY

On January 8, 1985, Georgetown filed an action against Ethan Allen seeking damages and a preliminary injunction compelling Ethan Allen to deliver furniture pursuant to the dealership relationship. During the next several months, Georgetown amended its complaint to include the following six claims against Ethan Allen: (1) intentional interference with the advantageous business relationship between Georgetown and Thomasville; (2) conversion of commissions which Georgetown would have earned on undelivered furniture; (3) breach of contract based on Ethan Allen's failure to provide Georgetown with an adequate period of time to terminate their relationship, and based on Ethan Allen's failure to arrange less burdensome payment terms for it as a dealer with satisfactory credit standing; (4) misrepresentation based on Ethan Allen's failure to provide adequate notice of termination and failure to arrange less burdensome payment terms; (5) trade libel and slander based on the publication of a January 24, 1985 dealer memorandum to all Ethan Allen dealers and the publication of a February 3, 1985 advertisement; and (6) violations of the Sherman and Clayton Acts based on Ethan Allen's alleged attempts to maintain market power and monopoly position as a furniture supplier in South Florida. Georgetown also added Levin as a plaintiff and Ancell as a party defendant in its amended complaint.

Ethan Allen answered Georgetown's complaints and asserted the following eight counterclaims against Georgetown, George Levin, and another company which Levin owns, Classic Motor Carriages, Inc. ("Classic Motor"); (1) an account stated claim for the amount that Georgetown owed Ethan Allen for previously delivered furniture; (2) misrepresentations based on Georgetown's representations that it had sufficient funds to make timely payments for the furniture being delivered; (3) fraudulent concealment of the fact that Georgetown did not have sufficient funds to pay for furniture being delivered; (4) fraudulent conveyance based on transfers of Georgetown's assets to Levin, Thomasville, Classic Motor, or others without adequate consideration and without regard to

Georgetown's debts to Ethan Allen; (5) conspiracy to commit civil theft based on an alleged scheme to obtain Ethan Allen's furniture without paying for it; (6) civil theft; (7) conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO); and (8) violations of RICO.

On July 28, 1986, the district court dismissed all of Georgetown's claims except the tortious interference claim. On April 13, 1987, the district court granted summary judgment against Georgetown on four new claims (breach of fiduciary duty, violation of the Connecticut Franchise Act, maintenance, and violation of Florida's Security of Communications Act) it raised in a third amended complaint. In addition, on October 24, 1988, the district court granted summary judgment against Georgetown on its renewed claim that Ethan Allen violated the Sherman and Clayton Acts. Georgetown filed its fourth and final amended complaint on November 6, 1989, dropping Levin and Ancell as parties and alleging only a tortious interference claim and a conversion claim against Ethan Allen. Georgetown's amended tortious interference claim alleged that "Ethan Allen wrongfully interfered with plaintiff Georgetown's customers, past, present, and future," as opposed to its earlier allegation of interference with its relationship with Thomasville. In an order denying Ethan Allen's motion for summary judgment, the district court limited the scope of proof on Georgetown's tortious interference claim to exclude prospective customers as a yardstick for lost profits. *Order Denying Motions for Summary Judgment* (March 30, 1990) (ruling that "Georgetown must show interference with an *existing* contractual or business relationship, coupled with legal rights and damages.") (emphasis in original).

Thus, the case proceeded to trial before a jury on Georgetown's conversion claim, Georgetown's tortious interference as limited in the March 30, 1990, order, and Ethan Allen's several counterclaims. At the close of Georgetown's case, the district court directed a verdict in favor of Ethan Allen on the conversion claim. At the close of the trial, on February 12, 1991, the district court entered an order dismissing Ethan Allen's civil theft, RICO, and two conspiracy counts without prejudice based on a stipulation between the parties.

The jury returned the following verdicts on the remaining claims and counterclaims: (1) on the tortious interference claim, the jury returned a special verdict finding that Ethan Allen had intentionally and maliciously interfered with Georgetown's business relationships with its customers and that this interference proximately caused damages to Georgetown in the compensatory amount of $285,000 for lost profits on existing contracts, and $7,380,000 for the "loss of the value of Georgetown's business, including goodwill"; (2) that Ethan Allen was privileged in placing the disputed advertisement because it sought to protect a legitimate economic interest, but that Ethan Allen had not "fairly and truthfully" represented to Georgetown's customers the reason for the termination of the dealership relationship; (3) on the interest due on the account stated claim (the amount was not disputed), the jury found that the parties had agreed that Georgetown would pay simple interest at the prime rate for the past due debt; (4) the jury found against Ethan Allen on its misrepresentation, fraudulent concealment, and fraudulent conveyance counterclaims.

Based on the jury's finding that it was privileged to place the disputed advertisement, Ethan Allen moved that Georgetown's tortious interference claim be dismissed. On February 27, 1991, the district court denied Ethan Allen's motion to dismiss the tortious interference claim based on its authority to harmonize the answers to the interrogatories and the jury's special verdict. In light of the instructions to the jury, the evidence, and other surrounding circumstances, the district court found that the jury's responses was a determination that "Ethan Allen did not exercise its privilege truthfully and in accordance with contemporary business standards" and concluded that its use of improper means vitiates its privilege of protecting its economic interest.

## ISSUES AND CONTENTIONS

Ethan Allen raises the following claims of error: (1) the district court erred in denying its motion for judgment notwithstanding the verdict (JNOV) or new trial because Georgetown could not, as a matter of law, establish that the advertisement caused the alleged loss of profits on existing orders, or establish a protected interest in potential future sales to past customers, or state a valid tortious interference claim for alleged interference with business relationships in which Ethan Allen was a party; (2) the district court erred in failing to dismiss Georgetown's tortious interference claim based on its common law privileges of competition and the protection of its legitimate economic interest, and its privilege to publish truthful information under the First Amendment; (3) the district court erred in refusing to grant a new trial based on its admission of prejudicial hearsay; (4) insufficiency of the evidence to support the jury's award of damages for alleged loss of profits on existing furniture orders, and alleged loss of value of Georgetown's business, including goodwill; (5) insufficiency of the evidence to support the jury's finding that Georgetown agreed to pay only simple interest on its outstanding indebtedness for the account stated claim; (6) the district court erred in refusing to instruct the jury on "badges of fraud" factors to consider in determining Georgetown's intent for purposes of the fraudulent conveyance counterclaim; and (7) the district court erred in refusing to instruct the jury that under capitalization is relevant for purposes of Ethan Allen's alter ego theory of fraudulent conveyance.

Georgetown responds that it did establish that Ethan Allen's placement of the advertisement caused the alleged loss of profits on existing orders, and did establish a protected interest in potential future sales to past customers under Florida law. Georgetown contends that Ethan Allen's other claims of error are waived based on its failure to present the issues in a timely fashion for a ruling in the district court. Alternatively, Georgetown contends that the evidence was sufficient to support the jury's award of damages, and sufficient to support the finding that Georgetown was obligated to pay only simple interest on the account stated claim. In addition, Georgetown contends that the district court did not abuse its discretion in failing to give Ethan Allen's proposed jury instructions where the actual instructions adequately covered the relevant law on Ethan Allen's fraudulent conveyance claim.[1]

## DISCUSSION

### (i) Jury Instructions

We find no reversible error in the district court's denial of Ethan Allen's motion for a new trial on its fraudulent conveyance counterclaim based on the district court's refusal to identify "badges of fraud" on the issue of intent, and refusal to instruct the jury that under-capitalization is relevant to its theory that Levin was the alter ego of Georgetown and the other counter-defendants. We note that a district court has "broad discretion in formulating a jury charge." *United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir.), *cert. denied*, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989). "In reviewing the adequacy of a jury instruction, the appellate court must examine the entire charge and determine

---

1. Georgetown also contends that the district court abused its discretion in denying its motion to amend the claim of tortious interference pursuant to rule 15(b), to include other alleged wrongful acts of Ethan Allen that interfered with its business relationships. The district court denied Georgetown's mid-trial motion to amend its theory on the tortious interference claim based on a finding that Georgetown failed to articulate the proposed new theory in its fourth amended complaint, and also failed to develop the theory during its examination of previous witnesses. The district court noted the

likelihood of confusion to jurors and prejudice to the defendant if it allowed Georgetown to amend its theory of tortious interference at that date. We find Georgetown's arguments that the district court abused its discretion in denying Georgetown's motion to amend to be clearly without merit and warranting no further discussion. We also find Georgetown's arguments that the district court erred in entering judgment on Georgetown's illegal wiretapping and conversion claims to be clearly without merit and warrant no discussion.

whether, taken as a whole, the issues and law presented to the jury were adequate." *United States v. Bizzard*, 674 F.2d 1382, 1389 (11th Cir.), *cert. denied*, 459 U.S. 973, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982). Contrary to Georgetown's argument, Ethan Allen did preserve this claim of error for appellate review based on its objections to the proposed charge during the charge conference. *See Mark Seitman & Associates, Inc. v. R.J. Reynolds Tobacco Co.*, 837 F.2d 1527, 1530 (11th Cir.1988) (holding that the right to appellate review of jury instructions for error is not barred where a party apprises the trial court of its objections during the charge conference).

■ On the badges of fraud claim, Ethan Allen based its proposed charge on the codification of the "badges of fraud" in Fla.Stat.Ann. § 726.105(2) which lists factors that "may" be considered along with other factors in determining intent. *See* Fla.Stat.Ann. § 726.105(2) (1988). Ethan Allen expressly conceded at the charge conference that the badges of fraud factors are relevant only if a transfer is made without receiving a reasonably equivalent value in exchange for the transfer. Because Ethan Allen relied on section 726.-105(2) which provided that consideration "may" be given to the badges of fraud factors, we hold that the district court did not err in refusing to specifically recite the particular badges of fraud factors in the jury instructions, which we find otherwise sufficient on the issue of intent. *See Bizzard*, 674 F.2d at 1389 (holding that "the mere failure to recite the jury instructions in the precise language requested by defendant is not error where, as here, the instructions are otherwise sufficient").[2] Moreover, in light of the undisputed jury finding that Georgetown did receive reasonably equivalent value in exchange for the disputed transfers, Ethan Allen cannot be heard to complain since it conceded at the charge conference that the badges of

fraud factors are relevant only if the disputed transfers were made without Georgetown receiving a reasonably equivalent value.

■ We also find no error in the district court's refusal to give Ethan Allen's proposed charge on under-capitalization as relevant to its alter ego theory of fraudulent conveyance. Ethan Allen's proposed jury instruction on under-capitalization did not merely state that under-capitalization is relevant to an alter ego claim. Rather, it would have charged the jury that "if a company has been under-capitalized and as a result prevents creditors from being able to collect their debts, the person who caused the under-capitalization is considered to be the alter ego of the company and thus personally liable for its debts." Because under-capitalization is only one of the factors relevant to an alter ego claim, we hold that the district court properly refused to charge the jury that the person who caused the under-capitalization of a corporation must be considered the alter ego of the company. In addition, we find no error in the district court's actual charge to the jury on Ethan Allen's alter ego theory because it adequately summarizes the factual controversies under the applicable law. *See Bizzard*, 674 F.2d at 1389. Accordingly, we hold the district court did not err in denying Ethan Allen's motion for a new trial based on its refusal to give requested jury instructions.

(ii) Interest on Account Stated Claim

■ As to Ethan Allen's challenge of the jury's award of only simple interest on Georgetown's outstanding indebtedness, we find that Ethan Allen waived its right to challenge the jury's finding as not supported with sufficient evidence. A party challenging sufficiency of the evidence on appeal must file a timely motion for a directed verdict at the end of all the evidence. Fed.R.Civ.P. 50(b); *Coker v. Amo-*

---

**2.** In addition to the special interrogatory on the issue of intent to hinder or delay Ethan Allen in collecting the indebtedness, the district court cautioned the jury that "you must determine when the transfer was made, at that time what was the condition of Georgetown, what was the extent of the indebtedness, the amount, and whether at the time the transfers were made in light of Georgetown's financial condition and Ethan Allen's indebtedness, did it hinder or delay Ethan Allen in collecting that indebtedness?"

*co Oil Co.*, 709 F.2d 1433, 1437–38 (11th Cir.1983), superseded by statute in part on other grounds as stated in *Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989). Ethan Allen failed to move for a directed verdict on the issue of simple interest at the end of all the evidence. Thus, we would ordinarily review the district court's submission of the issue to the jury under the plain error standard to determine whether *any* evidence supported submission of the issue. *Coker*, 709 F.2d at 1437 (applying the plain error standard of review where the objecting party failed to make a timely objection).

In this case, however, Ethan Allen agreed to submit the question of how interest was to be calculated on the undisputed principal amount of its account stated claim. At the charge conference, the parties agreed to provide the jury with three alternatives, including one calculated with simple interest. In addition, Ethan Allen suggested submitting a fourth alternative of the statutory rate in case the jury could not agree on one of the other three alternatives. Ethan Allen cannot now complain that the jury elected one of those three alternatives because "[i]t is a 'cardinal rule' of appellate procedure 'that a party may not challenge as error a ruling or other trial proceeding invited by that party.'" *Charter Co. v. United States*, 971 F.2d 1576, 1582 (Johnson, J., concurring in part and dissenting in part) (quoting *Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1530 n. 4 (11th Cir.1985) and citing additional cases). Accordingly, we hold that the district court did not err in denying Ethan Allen's motion for a new trial on the question of simple interest for its account stated claim.

### (iii) Hearsay

■ We also reject Ethan Allen's contention that the district court erred in denying its motion for a new trial based on the alleged admission of prejudicial hearsay. The claim concerns the district court's admission of the testimony of two Georgetown witnesses about statements that customers made about the reason for their demand for a refund of their deposits on existing orders. The district court struck the testimony of one of the two disputed witnesses, Preve, and ruled that the testimony of the other witness, Cormick, was admissible only as evidence of verbal acts under Fed.R.Evid. 801(c). The district court instructed the jury that "the statements of the customers that they saw the ad and demanded their money back is not admissible for the truth of the statements," but only as support for the plaintiff's position that "these customers demanded their refunds from Georgetown. Nothing else. Just the act of demanding the money."

Because of the district court's clear limiting instruction that the testimony be considered only as evidence of the verbal acts of demanding refunds, we hold that the district court did not abuse its discretion in admitting Cormick's testimony as non-hearsay under rule 801(c). *See United States v. Rodriguez–Cardenas*, 866 F.2d 390, 394 (11th Cir.1989) (recognizing that this court will not disturb an evidentiary ruling absent a clear showing that the district court abused its discretion), *cert. denied*, 493 U.S. 1069, 110 S.Ct. 1110, 107 L.Ed.2d 1017 (1990); *United States v. Peaden*, 727 F.2d 1493, 1500 (11th Cir.) (noting that rule 403 is the appropriate standard of reviewing a district court's admission of a statement for a non-hearsay purpose of rule 801(c), and setting forth the two limited categories of cases warranting reversal under that standard), *cert. denied*, 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 118 (1984).

### (iv) Privileges and Affirmative Defense

For the reasons stated in the district court's excellent February 27, 1991 *Memorandum of Decision and Order*, we hold that the district court did not err in denying Ethan Allen's motion to dismiss the tortious interference claim based on the asserted common law privileges to compete and to protect legitimate economic interest.

■ We also hold that Ethan Allen waived its right to assert that its publication of the February 3, 1985 advertisement is not actionable as tortious interference, based on its status as a party to the relationships allegedly interfered with and its

privilege to publish truthful information. Contrary to Ethan Allen's claims, we find that Ethan Allen failed to assert either argument as a ground for a directed verdict at the close of all evidence. After the district court denied Ethan Allen's motion to dismiss the tortious interference claim, the court specifically asked Ethan Allen to clarify the basis for its contention that it was protecting its own rights when publishing the ad. In response, Ethan Allen cited cases and made arguments for the sole proposition that its publication of the ad was privileged because it has "an economic interest in the marketplace." Ethan Allen made absolutely no argument that it was protecting its right to publish truthful information under the common law and First Amendment. Moreover, even though Ethan Allen cited cases which also discuss the principle that a tortious interference claim does not lie against a party to the disputed relationship, Ethan Allen pointed to these cases only as support for the argument that it was privileged to protect its "economic interest in the marketplace." We note that Ethan Allen voiced no objection to the district court's jury charge, which did not include any instructions on a truthful information privilege or a defense based on Ethan Allen's alleged status as a party to the disputed business relationships.

Because a motion for JNOV is technically only a renewal of a motion for a directed verdict made at the close of the evidence, Ethan Allen cannot assert grounds supporting its motion for JNOV that were not included in its motion for a directed verdict. See Litman v. Massachusetts Mutual Life Ins. Co., 739 F.2d 1549, 1557 (11th Cir. 1984). Accordingly, we hold that the district court did not err in denying Ethan Allen's motion for JNOV or new trial based on the truthful information privilege and its alleged status as a party to the disputed business relationships, because Ethan Allen waived its right to assert these grounds through its failure to assert them in its motion for directed verdict.

(v) Merits of Tortious Interference Claim

▮ Having concluded that the district court did not err in denying Ethan Allen's motion for JNOV or a new trial on the grounds of privilege and the party to the business relationship defense, we now turn to the merits of Ethan Allen's claims of error regarding the judgment in favor of Georgetown on the tortious interference claim. Under Florida law, a plaintiff must prove the following elements to state a valid tortious interference with advantageous business relations claim:

> (1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship.

*Ad–Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1348–49 (11th Cir.1987) (citations omitted); *see also Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985).

Ethan Allen contends that Georgetown did not establish a tortious interference claim as a matter of Florida law. Ethan Allen also argues that the evidence was insufficient to support the jury's award of damages under either theory of Georgetown's tortious interference claim. We note that Ethan Allen properly preserved its arguments on the tortious interference claim for appellate review. Ethan Allen twice moved for summary judgment on the tortious interference claim which resulted in the district court's April 13, 1987 and March 30, 1990 orders limiting Georgetown's proof to showing "interference with an *existing* contractual or business relationship, coupled with legal rights and damages." At the close of all evidence, Ethan Allen moved for a directed verdict on Georgetown's tortious interference claim based on the absence of evidence showing causation between the disputed advertisement and the cancellation of existing orders, based on the absence of evidence demonstrating causation between the advertisement and lost future profits, and based on an argument that the 89,000 persons in Georgetown's prospective customer

base cannot be the basis for any tortious interference claim under Florida law. After the court denied Ethan Allen's motion at the close of evidence and the jury returned its verdict, Ethan Allen raised the same arguments in its motion for a JNOV or new trial, and remittitur of damages.

Existing Orders

■ We find Ethan Allen's first argument concerning Georgetown's failure to establish causation to be without merit. Ethan Allen contends that Georgetown did not establish causation between the advertisement and the lost profits on existing orders. Ethan Allen argues that Georgetown could no longer fill the existing orders for Ethan Allen furniture, regardless of the advertisement, once Ethan Allen had exercised its right to terminate the dealership relationship.[3] Ethan Allen's causation argument is flawed because it takes too narrow a view of an "advantageous business relationship" under Florida law. "An action for intentional interference is appropriate even though it is predicated on an unenforceable agreement, if the jury finds that an understanding between the parties would have been completed had the defendant not interfered." *Landry v. Hornstein*, 462 So.2d 844, 846 (Fla. 3d D.C.A. 1985) (citation omitted). Based on our review of the evidence, we find that a reasonable jury could have concluded that Georgetown and the customers with existing orders had an "understanding," not evidenced in the written orders, that they would purchase furniture from Georgetown even if that meant converting their orders to Ethan Allen furniture already in stock or Thomasville furniture. Therefore, we hold that the district court did not err in denying Ethan Allen's motion for a JNOV based on the argument that Georgetown failed to establish causation between the publication of the advertisement and the cancellation of Georgetown's existing orders. *See Ad–Vantage Telephone*, 849 F.2d at 1351 (stating that a motion for JNOV is inappropriate where jury's determination of causality is adequately supported in the record).

In addition, we affirm the jury's award of $285,000 damages for the lost profits on existing orders. Georgetown's expert estimated the lost profits on existing orders to be $285,000, after reducing his original estimate to account for ordinary cancellations not attributable to the alleged interference. Based on the expert testimony, we hold that the district court did not err in denying Ethan Allen's motion for a new trial based on the sufficiency of the evidence supporting the jury's award of damages for lost profits on existing orders.

Loss of Georgetown's Business, Including Goodwill

■ The gravamen of this appeal and the issue most troubling to this court is Ethan Allen's assertion of error regarding the legal basis for the jury's award of $7,380,000 for the "loss of the value of Georgetown's business, including goodwill."[4] Ethan Allen argues that Georgetown's tortious interference claim is limited to alleged interference with existing advantageous business relations, as opposed to prospective customers. Thus, Ethan Allen argues that Georgetown could not establish a protected interest under Florida law for the loss of potential future sales to the 89,000 past customers in its customer database. Georgetown responds that Florida law does recognize a tortious interference claim based on the future profitability of an existing business enterprise, and based on prospective contractual or business relationships. Georgetown also argues that damages for a tortious interference claim need not be attributable to lost profits caused to identifiable contracts or relationships under Florida law.

**3.** Although Ethan Allen makes a different causation argument than the one specifically delineated in its motion for directed verdict, we find that Ethan Allen preserved the argument based on its express incorporation of the earlier motion for directed verdict at the close of Georgetown's case which specifically set forth the causation argument on appeal.

**4.** For purposes of context, we note that the $7.38 million damage calculation is based on the testimony of Georgetown's experts who opined that a hypothetical investor would have paid up to $6,223,000 for Georgetown before the February 3, 1985 advertisement, but that Georgetown had no value after the publication of the advertisement.

We note that Georgetown's fourth amended complaint alleged that Ethan Allen had interfered with its "past, present, and future customers." In the March 30, 1990 order, the district court expressly limited Georgetown's proof to showing "interference with an *existing* contractual or business relationship." In addition, based on our review of the charge to the jury, we cannot say as a matter of law that Georgetown failed to establish intentional and unjustified interference with existing advantageous business relationships that caused some damages. Indeed, we have already held that Georgetown stated a valid tortious interference claim as it relates to the cancellation of existing orders. Thus, the issue before us is not simply whether Georgetown failed to establish a prima facie case for tortious interference with a business relationship under Florida law. The question before us is properly recast as whether the evidence supporting the jury's $7.38 million damage award is within the scope of damages under Florida law. It was on the issue of damages that the district court gave the jury instructions which countenanced both Georgetown's theory for lost profits on existing orders, and its theory that Florida law on tortious interference allows recovery of damages for interference with an existing business enterprise, including goodwill.[5]

Ethan Allen argues that "the tort of interference with a business relationship does not operate as a broad protection of commercial reputation or potential business opportunities generally. Rather, [Florida law] protects only actual, identifiable relationships." Ethan Allen acknowledges that a protectible business relationship need not

be evidenced in an enforceable contract, but argues that a plaintiff must identify particular relationships, which accord the plaintiff some legal rights against the other party, in order to recover damages for a defendant's interference. Ethan Allen relies on decisions from several Florida appellate courts. *See, e.g., Southern Alliance Corp. v. City of Winter Haven,* 505 So.2d 489, 496 (Fla. 2d D.C.A.1987) (rejecting the tortious interference claim of a bar owner who did not identify a particular advantageous business relationship, after finding no case that recognized "a cause of action exists for the tortious interference with a business relationship with the community at large"); *Insurance Field Services, Inc. v. White & White Inspection and Audit Service, Inc.,* 384 So.2d 303, 306 (Fla. 5th D.C.A.1980) (holding that "economically advantageous business relationships, capable of ascertainment, existed between [the plaintiff] and its numerous insurance company clients, pursuant to which [the plaintiff] had legal rights"); *Lake Gateway Motor Inn v. Matt's Sunshine Gift Shops, Inc.,* 361 So.2d 769, 771–72 (Fla. 4th D.C.A. 1978) (rejecting a tortious interference claim because "a mere offer to sell a business which the buyer says he will consider, does not by itself give rise to legal rights which bind the buyer or anyone else with whom he deals").

In contrast, Georgetown relies on *Insurance Field* and other Florida decisions as recognizing that a plaintiff may recover damages in a tortious interference action for the loss of goodwill with past customers, even in the absence of present legal rights. In considering the scope of damages that an insurance auditor could recover from a former employee for his tortious

---

**5.** The district court charged the jury on three theories of compensatory damages: (1) loss of profits and existing contracts as of February 3, 1985; (2) loss of profit in the going out of business sale; and (3) loss of value of Georgetown's business, including goodwill. On the goodwill theory, the district court charged the jury as follows:

> The goodwill of a company is an intangible business value which reflects the basic human tendency to do business with a merchant who offers product of the type and quality which the customer desires and expects. Service to the customer and a willingness to stand be-

hind the product which is sold by the merchant are all factors. In determining goodwill, whether goodwill attaches, where the goodwill attaches to a product or a business, it may be symbolized in part by the public's acceptance and recognition of the product.... And so here as part of the damages, Georgetown claims a destruction of its goodwill. You first determine whether Georgetown proved by a preponderance of the evidence that it was destroyed or not destroyed, the extent to which it was impaired and the value of its loss.

interference with sixteen insurance company clients, the court in *Insurance Field* concluded that the plaintiff could recover damages based on loss of goodwill "occasioned solely by [the defendant's] conduct." *See Insurance Field*, 384 So.2d at 308 (noting that "Plaintiff's business, like most companies, revolves, in large measure, upon the building of goodwill accomplished when a client becomes accustomed to dealing with someone who is regularly performing a service. [The plaintiff's] field representatives and the individual [defendants] had been performing services for [plaintiff's] customers in a satisfactory manner, and the record provides no indication that its customers had any inclination to terminate using appellee's services"). Based on the *Insurance Field* court's decision and its favorable citation to the *Restatement (Second) of Torts*, Georgetown argues that Florida law allows recovery for the loss of value in a continuing business, including goodwill, in a tortious interference action. *See Restatement (Second) of Torts* § 766B, comment c (1979).

Because we do not find the decisions of the Florida district courts of appeal determinative of whether a business may recover for the loss of its value, including goodwill, and we find no controlling precedent of the Florida Supreme Court on the scope of damages under the tortious interference cause of action, we consider it appropriate to certify to the Florida Supreme Court for resolution this potentially recurring question on whether loss of a business's goodwill with past customers is recoverable under the tortious interference cause of action.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION

TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

Based upon the facts recited herein, we certify the following question in the above-styled case to the Florida Supreme Court:

Under Florida law, in a tortious interference with business relationships tort action, may a plaintiff recover damages for the loss of goodwill based upon future sales to past customers with whom the plaintiff has no understanding that they will continue to do business with the plaintiff, or is the plaintiff's recovery of damages limited to harm done to existing business relationships pursuant to which plaintiff has legal rights, as discussed in *Landry v. Hornstein*, 462 So.2d 844, 846 (Fla. 3d D.C.A.1985); *Douglass Fertilizers & Chemical, Inc. v. McClung Landscaping, Inc.*, 459 So.2d 335, 336 (Fla. 5th D.C.A.1984); *Insurance Field Services, Inc. v. White & White Inspection and Audit Service, Inc.*, 384 So.2d 303, 306 (Fla. 5th D.C.A.1980); and *Lake Gateway Motor Inn v. Matt's Sunshine Gift Shops, Inc.*, 361 So.2d 769, 771–72 (Fla. 4th D.C.A.1978)?

Our phrasing of this question is not intended to limit the Supreme Court of Florida in considering the issue presented. The entire record in this case and the briefs to the parties shall be transmitted to the Florida Supreme Court for assistance in answering this question.

### CONCLUSION

We affirm the judgment of the district court in all respects on Ethan Allen's counterclaims. On Georgetown's tortious interference claim, we reject the various claims of error and affirm that portion of the judgment of the district court that awards Georgetown $285,000 in damages for its lost profits attributable to Ethan Allen's tortious interference with Georgetown's advantageous business relationships with those customers who had existing orders. We certify the loss of the value in Georgetown's business, including goodwill, question to the Florida Supreme Court. We affirm the judgment of the district court on Georgetown's other claims.

AFFIRMED in part and CERTIFIED.