769 So.2d 1105 (2000)
MARTIN PETROLEUM CORPORATION, Appellant,
v.
AMERADA HESS CORPORATION, Appellee.
No. 4D99-3361.
District Court of Appeal of Florida, Fourth District.
October 4, 2000.
*1106 Romney C. Rogers and Charles M. Kramer of Rogers, Morris & Ziegler, Fort Lauderdale, for appellant.
Barry R. Davidson and N. Vail Gardner of Hunton & Williams, Miami, for appellee.
KLEIN, J.
Appellant plaintiff, Martin Petroleum, had a contract with Bamco, which operated service stations, to supply gasoline to Bamco. After Bamco terminated its contract with Martin and began purchasing gasoline from Amerada Hess, Martin brought this action against Bamco and Hess. In this appeal Martin contends that the trial court erred in granting Hess' motion for summary judgment on Martin's claim for tortious interference against Hess. We affirm.
Martin and Bamco entered into a contract in 1993 under which Martin was to provide Texaco gasoline to Bamco for a period of ten years. Pursuant to that agreement, Martin provided gasoline to four stations owned by Bamco. In 1994 Bamco entered into an agreement with Hess to purchase gasoline from Hess for a station which was not involved in the contract between Bamco and Martin. After that, Bamco initiated contact with Hess in order to see if Hess was interested in providing gasoline for the four stations which were purchasing gasoline from Martin.
The owner of Bamco believed that his agreement to purchase gasoline from Martin was terminable at will, and he told the Hess representative that the contract was terminable at will. The Hess representative did not ask for and was not given a copy of the agreement. Nor was there any discussion between Hess and Bamco as to the price Bamco was paying Martin for gasoline. The Hess representative merely supplied the owner of Bamco with information as to the terms under which Hess would provide gasoline. Hess' contracts were standard and non-negotiable.
Hess also had a standard rebranding program under which it would make payments to bring stations up to Hess' standards so far as things like signage, canopy and pumps. Hess did know that Bamco, if it stopped purchasing gasoline from Martin, was required to repay Martin for signs Martin had installed at the stations. Bamco utilized some of the rebranding money it received from Hess to repay Martin.
In this litigation resulting from Bamco's switch to Hess, Martin alleged that Hess *1107 had committed tortious interference with Martin's contractual relationship with Bamco. Hess moved for summary judgment, asserting that under the above facts, which were undisputed, there was no interference.
Martin opposed the summary judgment, arguing that the there were issues of fact as to whether Hess knew of Martin's contract with Bamco, which was allegedly not terminable at will, even though there was nothing in the depositions or affidavits which supported that assertion. The trial court concluded that, because it was undisputed that Bamco approached Hess, and not vice-versa, as a matter of law there was no interference and entered a summary judgment for Hess.
The elements or tortious interference were set out in Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla.1985) as follows:
(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.
Florida follows the Restatement (Second) of Torts § 766 (1977) for this cause of action. Gossard v. Adia Servs., Inc., 723 So.2d 182, 185 (Fla.1998)(noting that Florida's precedent is consistent with section 766 of the Restatement, and citing comment h).
In granting Hess' motion for summary judgment, the trial court cited comment n to section 766 of the Restatement, which provides:

Making agreement with knowledge of the breach. One does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person. (Compare Comment m). For instance, B is under contract to sell certain goods to C. He offers to sell them to A, who knows of the contract. A accepts the offer and receives the goods. A has not induced the breach and is not subject to liability under the rule stated in this Section.
In the present case, the only two people having any knowledge about the issue, the owner of Bamco and the Hess representative, testified that Bamco initiated the contact with Hess. Under comment n, even if Hess had known Bamco would be breaching a contract with Martin by purchasing its gasoline from Hess, Hess would not be liable under the facts in this case. And; as we said earlier, Hess had no knowledge of the terms of the contract between Martin and Bamco.
Martin relies on comment m to section 766 of the Restatement which provides:

Inducement by offer of better terms. Another method of inducing B to sever his business relations with C is to offer B a better bargain than that which he has with C. Here, as in the situation dealt with in Comment l, a nice question of fact is presented. A's freedom to conduct his business in the usual manner, to advertise his goods, to extol their qualities, to fix their prices and to sell them is not restricted by the fact that B has agreed to buy similar goods from C. Even though A knows of B's contract with C, he may nevertheless send his regular advertising to B and may solicit business in a normal course. This conduct does not constitute inducement of breach of the contract. The illustration below is a case of solicitation that does constitute inducement.
Illustration:
3. A writes to B: "I know you are under contract to buy these goods from C. Therefore I offer you a special price way below my cost. If you accept this offer, you can break your *1108 contract with C, pay him something in settlement and still make money. I am confident that you will find it more satisfactory to deal with me than with C." As a result of this letter, B breaks his contract with C. A has induced the breach.
We disagree with Martin that the illustration to comment m, on which it relies, is applicable here. There is no evidence that Hess was giving Bamco a special price below its cost. On the contrary, there was no evidence other than that the contracts offered by Hess, which Bamco accepted, were standard and non-negotiable.
In urging that we should reverse, Martin cites far more cases on the standard of review for summary judgments than it does on the substantive issue of whether there was tortious interference with a contract. Although we expect the parties in every case to address the standard of review, when that standard is so well established as it is for review of summary judgments, it is only necessary to cite one case, not nine as has been done here.
Counsel's preoccupation with summary judgment cases probably stems from the popular misconception among the trial bar and bench that summary judgments are routinely reversed by appellate courts. Although it is true that, generally speaking, issues of negligence cannot be resolved on summary judgment, commercial litigation is another matter. Where a claim such as this one is filed, and after full discovery there is no evidence to support the allegations and there are thus no genuine issues of material fact, summary judgment should be granted. A party should not be put to the expense of going through a trial, where the only possible result will be a directed verdict. See, e.g., Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc., 361 So.2d 769 (Fla. 4th DCA 1978)(reversing jury verdict for entry of directed verdict because there was no unjustified interference) and American Medical Intern., Inc. v. Scheller, 462 So.2d 1 (Fla. 4th DCA 1984)(same). In the present case, Hess demonstrated that there were no material issues of fact, entitling it to a summary judgment under Holl v. Talcott, 191 So.2d 40 (Fla.1966), and we accordingly affirm.
STONE, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.