# Third District Court of Appeal

## State of Florida

Opinion filed January 6, 2021.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D19-1597
Lower Tribunal No. 17-8521

————————————

**Margery Glickman and Fred Glickman,**
Appellants,

vs.

**Kindred Hospitals East, LLC, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Grossman Roth Yaffa Cohen, P.A., and Rachel Wagner Furst, Andrew B. Yaffa, and Manuel A. Arteaga-Gomez, for appellants.

Marlow, Adler, Abrams, Newman & Lewis, and Rosemary B. Wilder, for appellee Jones Lang Lasalle Americas, Inc.; Banker Lopez Gassler P.A., and Ezequiel Lugo (Tampa), for appellees Kindred Hospitals East, LLC d/b/a Kindred Hospital–South Florida–Coral Gables, and Kindred Healthcare Operating, Inc.; The Barthet Firm, and Paul D. Breitner, for appellee Nor-Seg Security Services, Inc.

Before LOGUE, SCALES, and LINDSEY, JJ.

LOGUE, J.

Margery Glickman and Fred Glickman, the plaintiffs below, appeal the entry of summary judgment for Nor-Seg Security Services, Inc., one of the defendants below (hereinafter, the "Security Company"). For the reasons stated below, we affirm.

**BACKGROUND**

This case stems from a tragic shooting by an 87-year-old man, Theobaldo Tames, in the lobby of the Kindred Hospital in Coral Gables, Florida. The hospital provides long-term acute care to patients who are often terminal. The plaintiff, Mrs. Glickman, then 68 years old, was invited by Tames to meet him in the lobby of the hospital. Both Mrs. Glickman and Tames had a close friend receiving long term care in the hospital. In fact, Tames had been a daily visitor of their mutual friend at the hospital for several months.

On the morning of the incident, Tames signed in at the front desk to visit the room of the friend. The person who signed him in was an employee of the hospital, not the Security Company. The hospital employee recognized Tames as the elderly gentleman who visited the hospital daily. Tames did not act anxious or upset. Unknown to the employee, Tames' friend had died overnight. After signing in, Tames sat down in the waiting area. When Mrs. Glickman arrived and sat down

2

opposite him, Tames drew a revolver from his brief case, shot Mrs. Glickman several times, and then shot and killed himself. Mrs. Glickman was wounded but survived.

The hospital's policies mandated that "[n]o employee, visitor, vendor, client, customer or other person may bring, carry or possess a firearm or other deadly weapon" at the hospital. A prominent sign in the lobby advised that firearms were prohibited on the premises. The guards provided by the Security Company were unarmed. This was the first shooting or discharge of a weapon at the hospital. However, at a Kindred facility in Illinois in 2012, a woman delivered a concealed weapon to a patient, who then killed them both. At a Kindred facility in California in 2002, a patient shot himself with a concealed weapon.

The Glickmans sued Kindred Hospitals East, LLC, the entity that owned and operated the hospital; Kindred Healthcare Operating, Inc., the national operating company; Kindred Healthcare, Inc., a national holding company; Jones Land Lasalle Americas, Inc., the company that managed the hospital property; and the Security Company. After the pleadings were closed and extensive discovery completed, the Security Company moved for summary judgment on the basis that it owed no duty to the Glickmans on two separate grounds: (1) its contract with the hospital limited the Company to protecting the hospital and its employees and expressly disavowed a duty to protect others, or (2) nothing in its conduct foreseeably created a broader "zone of risk" encompassing such a crime on the premises.

3

Regarding its contention that its contract limited its duties, the Security Company pointed to a provision in the contract that read:

> [T]he security services hereunder are only being provided to Client and its employees, and no other person or entity is, nor is intended to be, a third party beneficiary under this contract. [The Security Company] is assuming no duty to protect any other persons or entities or their property, nor is it being compensated hereunder to do so . . . .

(emphasis added). The contract also provided:

> [The Security Company's] employees are a deterrent to crime and will report to the appropriate authorities anything they see or hear that is out of the ordinary, but it is the responsibility of the local police to pursue, investigate, apprehend, and charge criminals. [The Security Company] shall have no responsibility nor obligation to pursue, investigate, apprehend or charge any person as a result of perceived or observed criminal conduct.

(emphasis added). Finally on this point, the contract provided the hospital agreed to indemnify the Security Company "from all losses, liabilities, damages and expenses . . . as asserted against [the Security Company] by third parties arising out of or occurring by reason of the negligence, acts, omissions or misconduct of any third party."

The trial court granted summary judgment on both grounds. This appeal timely followed.

## DISCUSSION

A trial court's ruling on a motion for summary judgment is reviewed de novo. "Summary judgment is proper if there is no genuine issue of material fact and if the

4

moving party is entitled to a judgment as a matter of law." Gonzalez v. Citizens Prop. Ins. Corp., 273 So. 3d 1031, 1035 (Fla. 3d DCA 2019) (quoting Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000)).

"A court considering summary judgment must avoid two extremes." Id. at 1035. On one hand, "a motion for summary judgment is not a trial by affidavit or deposition. Summary judgment is not intended to weigh and resolve genuine issues of material fact, but only identify whether such issues exist." Perez–Gurri Corp. v. McLeod, 238 So. 3d 347, 350 (Fla. 3d DCA 2017). "If there is disputed evidence on a material issue of fact, summary judgment must be denied and the issue submitted to the trier of fact." Id. At the same time, a "party should not be put to the expense of going through a trial, where the only possible result will be a directed verdict." Perez-Rios v. Graham Cos., 183 So. 3d 478, 479 (Fla. 3d DCA 2016) (quoting Martin Petroleum Corp. v. Amerada Hess Corp., 769 So. 2d 1105, 1108 (Fla. 4th DCA 2000)). "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." ABC Salvage, Inc. v. Bank of Am., N.A., 45 Fla. L. Weekly D1152 (Fla. 3d DCA May 13, 2020) (quoting Encarnacion v. Lifemark Hosps. of Fla., 211 So. 3d 275, 277 (Fla. 3d DCA 2017) (internal citations omitted)).

As mentioned above, the trial court's first basis for granting summary judgment concerned the contractual language that limited the Security Company's

5

scope of services to protecting the hospital and its employees only. On this point, the final judgment reads: "Pursuant to the Agreement, [the Security Company] only undertook responsibility to protect Kindred Hospital and its employees, not its visitors or other third parties. Thus, pursuant to the Agreement, [the Security Company] had no duty to protect Mrs. Glickman who was a visitor to Kindred Hospital." On appeal, the Glickmans challenge this basis for the summary judgment in two ways.

First, they argue that the Security Company's actions in providing security reflects a general undertaking to protect visitors like Mrs. Glickman even though the contract limits its duty to hospital employees. Without extended discussion, we reject this argument. Cascante v. 50 State Sec. Serv., Inc., 300 So. 3d 283, 287–88 (Fla. 3d DCA 2019) (upholding summary judgment for security company on basis it had no duty to provide security during hours other than those set forth in its contract because the extent of its contractual undertaking defines the scope of its duty); see also Robert-Blier v. Statewide Enters., Inc., 890 So. 2d 522, 523–24 (Fla. 4th DCA 2005) (holding "an independent contractor hired by the owner of premises to provide some—but not full—security services can[not] be liable for failing to do more than it contracted to do").

Second, the Glickmans note that the written contract by its terms expired after one year and was never renewed in writing although the hospital continued to pay

the Security Company and the Company continued to provide services for years after the written contract expired up to and including the date of the shooting of Mrs. Glickman. They contend that, after expiration of the original written contract, the hospital and the Security Company entered into a new, unwritten contract in which the Security Company assumed the duty to protect others in addition to the employees as set forth in the written contract. In the alternative, they argue that the Security Company voluntarily undertook to expand the scope of its services in this regard.

In support of this argument, the Glickmans refer to various materials. They note the Security Company made suggestions to the hospital to improve security by adding cameras and other enhancements. They point to the Security Company's "post orders" to its guards regarding matters like patrolling, clocking into locations to ensure patrolling, conduct when assigned to front desk (which, as occurred when Tames signed-in on the morning of this incident, was not required to be always manned by the Security Company), the requirement that persons beyond the entry area wear identifying badges or stickers, and similar matters. Finally, they note an official of the Security Company in a deposition, while denying the scope of services changed when expressly asked, also agreed to the general proposition that the purpose of security officers was to "promote" the safety of patients, visitors, and employees. We do not find any evidence in these materials that creates a genuine

7

issue of material fact that would preclude summary judgment. In other words, the materials put forward by the Glickmans on this point are not sufficient for a reasonable jury to return a verdict that the Security Company expressly or by implication agreed in contract or voluntarily undertook to expand the scope of services and liability beyond those stated in the written contract. See ABC Salvage, 45 Fla. L. Weekly D1152.

We therefore uphold the summary judgment under review on the basis that the Security Company's contract with the hospital limited the Company to protecting the hospital and its employees and expressly disavowed a duty to protect others. In doing so, we do not consider or address the other ground for the summary judgment. Nor do we address the duty owed to visitors by the owner or operator of the hospital.

Affirmed.