[4] The portion of the trial transcript included in the record on appeal was sufficient to enable the DCA to provide meaningful review of this issue.
[5] His six claims of ineffective assistance were as follows:
(1) Trial counsel failed to contemporaneously object and to renew all objections pursuant to the trial court's denial of the defense's peremptory challenge of a juror.
(2) Trial counsel failed to properly authenticate x-rays in support of the testimony of Bush's expert witness.
(3) Trial counsel failed to allow Bush to testify.
(4) Trial counsel failed to object or move for a mistrial when the prosecutor made statements ridiculing the defense in the presence of the jury.
(5) Trial counsel failed to submit into evidence certain certified medical records.
(6) Trial counsel failed to impeach or attempt to impeach the inconsistent testimony and credibility of one of the state's witnesses.
[6] The State began the hearing by calling Lindsey Glazer, one of Bush's trial attorneys, and Benjamin Simon, the prosecutor. Byrd followed with the testimony of Gregg Toung, Bush's other trial attorney, and Bush.
[7] The three claims raised on appeal were claims (1), (2), and (6) in Bush's Rule 3.850 motion. See supra note 5.
[8] Bush did not specify how or why the missing transcript resulted in a violation of his United States constitutional rights. The sole federal authority his brief cited on this point was Hardy v. United States , 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), which is inapposite. See infra note 9.
[9] Jones v. State , 923 So.2d 486 (Fla. 2006) ; Delap v. State , 350 So.2d 462 (Fla. 1977) (per curiam); Vilsaint v. State , 890 So.2d 1293 (Fla. 3d Dist. Ct. App. 2005) (mem.); L.I.B. v. State , 811 So.2d 748 (Fla. 2d Dist. Ct. App. 2002) ; Blasco v. State , 680 So.2d 1052 (Fla. 3d Dist. Ct. App. 1996). In addition to these decisions, Bush cited Justice Goldberg's statement in Hardy , 375 U.S. at 288, 84 S.Ct. at 431 (Goldberg, J., concurring), that:
the most basic and fundamental tool of [an appellate advocate's] profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law.
The Hardy Court was addressing the question of whether under the scheme created in 28 U.S.C. § 1915, which allowed "any federal court [to] authorize an 'appeal' in forma pauperis ," a court-appointed counsel, who had not represented the indigent defendant at trial, should be provided a complete transcript of the trial proceedings at government expense in order to discharge his professional duty to the defendant, as his appellate counsel, as described in Ellis v. United States , 356 U.S. 674, 78 S.Ct. 974, 975, 2 L.Ed.2d 1060 (1958). Hardy , 375 U.S. at 278-82, 84 S.Ct. at 425-28. In answering the question in the affirmative, the Court did not "reach a consideration of constitutional requirements." Id. at 282, 84 S.Ct. at 428.
[10] The Florida Supreme Court reviewed the defendant's conviction in exercising its "conflict" jurisdiction. See Fla. Const. art. V, § 3 (b)(3).
[11] Delap , 350 So.2d 462 ; L.I.B. , 811 So.2d 748.
[12] The District Court expressed the claim in these quoted words in its order denying Bush's petition. As stated in Bush's petition and by the Magistrate Judge in his report and recommendation to the District Court, the claim was this: "The petitioner has a constitutional right under the Fifth Amendment and Fourteenth Amendments to the guarantee of due process and fundamental right to access the courts through a complete record on appeal which is indispensable to the realization of this constitutional right."
[13] Mayer involved an Illinois Supreme Court's denial of a transcript to an indigent who had been convicted of violating Chicago ordinances. 404 U.S. at 190-93, 92 S.Ct. at 412-14. Applying the principle it announced in Griffin v. Illinois , 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) -that the "constitutional guarantees of due process and equal protection" require the provision of trial transcripts sufficiently complete to permit proper consideration of an indigent's direct appeal of his conviction-the United States Supreme Court vacated the Illinois Supreme Court's order denying the transcript. Mayer , 404 U.S. at 199, 92 S.Ct. at 417. Nothing in Mayer or any other United States Supreme Court decision we are aware of extends this equal protection right to a case in which the State has not discriminated against the defendant on account of his indigent status.
[14] We note that the quoted part of these statements did not distinguish between the direct appeal of a conviction and the appeal of an adverse postconviction decision.
[15] The District Court noted that "[i]n Ground Four [of his petition, Bush] argues that his Fifth and Fourteenth Amendment rights to due process and access to the courts were violated by being required to appeal and seek post-conviction remedies with an incomplete record." In adopting the Magistrate Judge's recommendation, however, the Court did not explicitly address the question of whether the Due Process Clause incorporated a right to access the courts.
[16] Regardless of abandonment, Bush's access to the courts claim is not persuasive. Access to the courts claims generally assert a right to something that the state could provide, or they involve state interference with individuals' ability to challenge their convictions. See, e.g. , Bounds v. Smith , 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); Johnson v. Avery , 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (holding that, unless alternative sources of assistance are provided, prisoners must be allowed access to inmate "writ-writers"); Ex Parte Hull , 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941) (holding that the state could not refuse to mail a prisoner's inartful pleadings to the courts). Here, portions of Bush's trial transcript were lost through no fault of the State, and the State had no power to conjure the missing portions.
[17] Bush has never contended, and does not contend here, that the missing trial transcript caused him any prejudice in advocating the single claim of trial-court error he presented to the DCA in appealing his convictions.
--------