# Third District Court of Appeal

## State of Florida

Opinion filed March 13, 2019.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D17-2609
Lower Tribunal No. 14-4084

————————————

**Yosvani Gonzalez and Yenisleidy Perez,**
Appellants,

vs.

**Citizens Property Insurance Corporation,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Antonio Marin, Judge.

Giasi Law, P.A., and Melissa A. Giasi (Tampa), for appellants.

Cole, Scott & Kissane, P.A., and Kathryn L. Ender, Scott A. Cole, Mark D. Tinker, and Aram P. Megerian (Tampa); Hinshaw & Culbertson LLP, and Maureen G. Pearcy, for appellee.

Before LOGUE and MILLER, JJ., and SUAREZ, Senior Judge.

LOGUE, J.

Yosvani Gonzalez and Yenisleidy Perez (the "Homeowners') appeal from a final summary judgment entered in favor of Citizens Property Insurance Corporation ("Citizens").  While the affidavits filed by Citizens met its burden as the movant for summary judgment, the affidavits filed by the Homeowners did not satisfy their burden as the opponents. Accordingly, we affirm.

**Facts**

The Homeowners sued Citizens, their property insurance carrier, for water damage to the interior of their home due to a leak in their roof. In their complaint, they alleged the roof leak was created by a wind storm event which occurred on or around July 17, 2013. The over-arching issue in the lawsuit was whether the leak in the roof was due to a wind storm event (covered by their policy) or normal wear and tear (not covered by their policy).

Citizens moved for summary judgment asserting that the leak was caused by normal wear and tear of a roof beyond its useful life and no genuine issue of fact existed in this regard. Citizens grounded its motion on two affidavits based on two separate inspections of the damaged roof. One inspection was conducted two days after the loss occurred and the other nine months after the loss occurred. Both inspections took place before the roof was replaced. The claims adjuster and roofing contractor who conducted the inspections found no evidence of wind damage. Both attributed the roof leak to wear and tear due to age. The roofing

2

contractor indicated that the roof was twenty-one years old and beyond its useful life. He described in detail cracks in the roof membrane and the loss of the seal on the roof which he attributed to normal age-related deterioration of the roof.[1]

---

[1]The roofing contractor hired by Citizens, who testified to having 45 years of experience, averred in his affidavit:

> 11. Upon physical inspection of the flat front roof, I found that the membrane is well worn, there are cracks to the membrane, a topical sealer that has been applied, and some of the cracks extend completely through the top membrane. Edges of the roof membrane are no longer sealed to the metal drip edge allowing water leakage.
>
> 12. The previously mentioned conditions on this flat front roof are consistent with normal wear and tear and the mentioned repairs are considered only a temporary fix for any issues since topical sealants will deteriorate from exposure to the sun's UV Rays.
>
> 13. Upon inspection of the back flat roof, I observed it is in a similar condition as the front flat roof, but it does have a different membrane used as the cap sheet. There are similar cracks in the cap sheet, a topical sealant has been applied along the laps of the material, and the edges of the roof system are no longer sealed to the metal drip edge.
>
> 14. The conditions mentioned regarding the back flat roof are considered as normal wear and tear of the system as it ages.
>
> 15. The roof leak claimed in this matter . . . is the direct result of normal wear and tear of the roof system and the leak is not through a wind storm intrusion.

To oppose the summary judgment, the Homeowners filed two affidavits by Al Brizuela, a registered engineer. The first affidavit is entirely conclusory. In it, Mr. Brizuela does little more than announce "the roof leak was the result of a one-time wind event on or about 7/17/2013" and broadly disagree with the opinion of the roofing contractor: "[t]his opinion by [the roofing contractor] is not backed by any scientific evidence and there is no evidence to support the application of these allegations to the subject house or roof." Significantly, Mr. Brizuela had not inspected the property at the time he signed his first affidavit and he gives no basis for his opinion.

Mr. Brizuela then submitted a second affidavit based on an inspection. In it and the attached "Proof of Loss Evaluation and Assessment Report," Mr. Brizuela opined that "openings [in the roof] were created by strong wind and rain events that took place between June 29th and July 3rd, 2013." (Emphases omitted). His opinion in this regard was based first upon his "eye witness account" in which "[t]he damages to the roof were observed in areas more vulnerable to wind gusts such as the intersection of the flat roof and inclined roof and along the roof ridge." He did not describe what the damage to the roof looked like. He admits, moreover, that his inspection of the roof occurred one year after the Homeowner had entirely replaced the damaged roof. He did not explain how he was able to observe "damages to the roof" when the damaged roof had been replaced one year earlier. [2]

4

Secondly, he finds that the roof was subject to "high winds between June 29th and July 3rd, 2013 when winds up to 60 mph were recorded near the property." In particular, he opined that the subject property experienced 60-mph winds because Miami-Opa Locka Airport, which is located more than three miles from the subject property, recorded wind "gusts" of 60 miles per hour of unknown duration on June 29, 2013. Significantly, the claimed date of loss was two weeks later on or about July 17, 2013. Moreover, Mr. Brizuela admitted "Predicting wind at other locations, wind speed from a particular direction at a particular time, with an acceptable degree of accuracy is currently highly inaccurate."

**Analysis**

This Court reviews a trial court's ruling on a motion for summary judgment de novo. <u>Volusia Cty. v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126, 130 (Fla. 2000). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." <u>Id.</u> "Summary judgment is designed to test the sufficiency of the evidence to determine if there is sufficient evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings." <u>The Fla. Bar v. Greene</u>, 926 So. 2d 1195, 1200 (Fla. 2006). Because summary judgment tests the sufficiency of the evidence

---

[2] Although he expressly states the roof was replaced ("the roof was replaced before we inspected"), he also states "[w]e would recommend the replacement of the roofing system if the homeowner has not done it yet."

5

to justify a trial, it "is proper only if, taking the evidence and inferences in the light most favorable to the non-moving party, and assuming the jury would resolve all such factual disputes and inferences favorably to the non-moving party, the non-moving party still could not prevail at trial as a matter of law." Moradiellos v. Gerelco Traffic Controls, Inc., 176 So. 3d 329, 334–35 (Fla. 3d DCA 2015).

A court considering summary judgment must avoid two extremes. On the one hand, "a motion for summary judgment is not a trial by affidavit or deposition. Summary judgment is not intended to weigh and resolve genuine issues of material fact, but only identify whether such issues exist. If there is disputed evidence on a material issue of fact, summary judgment must be denied and the issue submitted to the trier of fact." Perez–Gurri Corp. v. McLeod, 238 So. 3d 347, 350 (Fla. 3d DCA 2017). On the other hand, a "party should not be put to the expense of going through a trial, where the only possible result will be a directed verdict." Perez-Rios v. Graham Cos., 183 So. 3d 478, 479 (Fla. 3d DCA 2016) (quoting Martin Petroleum Corp. v. Amerada Hess Corp., 769 So. 2d 1105, 1108 (Fla. 4th DCA 2000)).

We hold that the two affidavits submitted by Citizens were sufficient to meet its burden as movant for summary judgment. It therefore became the burden of the Homeowners, as the parties opposing the motion, either to (1) file an affidavit indicating they needed additional time to take identified discovery, pursuant to

6

subsection (f) of the rule; or (2) file "summary judgment evidence on which the adverse party relies," pursuant to subsection (c) of the summary judgment rule. Fla. R. Civ. P. 1.510.

The Homeowners chose the second option and filed affidavits in opposition. In this situation, the law of Florida shifts the burden to present evidence from the movant to the party opposing summary judgment:

> If the moving party presents evidence to support the claimed non-existence of a material issue, he will be entitled to a summary judgment unless the opposing party comes forward with some evidence which will change the result - that is, evidence sufficient to generate an issue on a material fact. When analyzed in this fashion the summary judgment motion may be categorized as a "pre-trial motion for a directed verdict." At least it has most of the attributes of a directed verdict motion.
>
> The initial burden, therefore, is upon the movant. When he tenders evidence sufficient to support his motion, then the opposing party must come forward with counter-evidence sufficient to reveal a genuine issue. The movant, however, does not initially carry the burden of exhausting the evidence pro and con, or even examining all of his opponent's witnesses. To fulfill his burden he must offer sufficient admissible evidence to support his claim of the non-existence of a genuine issue. If he fails to do this his motion is lost. If he succeeds, then the opposing party must demonstrate the existence of such an issue either by countervailing facts or justifiable inferences from the facts presented. If he fails in this, he must suffer a summary judgment against him.

Harvey Bldg., Inc. v. Haley, 175 So. 2d 780, 782-83 (Fla. 1965) (citations omitted).[3]

7

In this regard, the Rule requires that "opposing affidavits must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein." Fla. R. Civ. P. 1.510(e). In short, the affidavits opposing summary judgment must identify "admissible evidence that creates a genuine issue of material fact." Panzera v. O'Neal, 198 So. 3d 663, 665 (Fla. 2d DCA 2015) (citing Rooker v. Ford Motor Co., 100 So. 3d 1229, 1231 (Fla. 2d DCA 2012)). The purpose of this requirement is "to ensure that there is an admissible evidentiary basis for the case rather than mere supposition or belief." Alvarez v. Fla. Ins. Guar. Ass'n, Inc., 661 So. 2d 1230, 1232 (Fla. 3d DCA 1995) (quoting Pawlik v. Barnett Bank of Columbia Cty., 528 So. 2d 965, 966 (Fla. 1st DCA 1988)).

The focus is on whether the affidavits show evidence of a nature that would be admissible at trial; if so, any questions regarding relative credibility or weight of that evidence compared to other evidence cannot be resolved on summary judgment but must be left for the trier of fact. Hernandez v. United Auto. Ins. Co.,

---

[3] Harvey Building has been continuously cited for over sixty years and remains the black letter law today. See, e.g., The Fla. Bar v. Mogil, 763 So. 2d 303, 307 (Fla. 2000) (citing Harvey Building with approval); Landers v. Milton, 370 So. 2d 368, 370 (Fla. 1979) (same); Tank Tech, Inc. v. Valley Tank Testing, L.L.C., 244 So. 3d 383, 389 (Fla. 2d DCA 2018) (same); Cong. Park Office Condos II, LLC v. First-Citizens Bank & Tr. Co., 105 So. 3d 602, 610 (Fla. 4th DCA 2013) (same); Juarez v. New Branch Corp., 67 So. 3d 1159, 1160 (Fla. 3d DCA 2011) (same); Cassady v. Moore, 737 So. 2d 1174, 1178 (Fla. 1st DCA 1999) (same); Magma Trading Corp. v. Lintz, 727 So. 2d 377, 378 (Fla. 5th DCA 1999) (same).

730 So. 2d 344, 345 (Fla. 3d DCA 1999) ("In ruling on a motion for summary judgment, it is well-established that the court may neither adjudge the credibility of the witnesses nor weigh the evidence.").

Thus, for example, an affidavit averring a pilot had sometimes in the past allowed other persons in a plane to pilot aircrafts did not create an issue of fact as to whether the pilot was allowing another person to pilot the aircraft during a particular fatal crash: "[i]t is well established that affidavits, such as those presented by plaintiff, which are based entirely upon speculation, surmise and conjecture, are inadmissible at trial and legally insufficient to create a disputed issue of fact in opposition to a motion for summary judgment." Morgan v. Cont'l Cas. Co., 382 So. 2d 351, 353 (Fla. 3d DCA 1980) (citing Food Fair Stores, Inc. v. Trusell, 131 So. 2d 730 (Fla. 1961)).

Similarly, an affidavit that summarily states a property was used for certain purposes without providing any supporting details and the basis for such knowledge does not "set forth such facts as would be admissible in evidence" and therefore cannot be used to defeat summary judgment. Stolzenberg v. Forte Towers S., Inc., 430 So. 2d 558, 559 (Fla. 3d DCA 1983) (quotation omitted). See, e.g., Pino v. Lopez, 361 So. 2d 192, 193 (Fla. 3d DCA 1978) (Plaintiff's affidavit in opposition to the motion for summary judgment was insufficient as a matter of law because it alleged conclusions of law without supporting facts.).

9

Along the same lines, the principle that "no weight may be accorded [to] an expert opinion which is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning," Div. of Admin. v. Samter, 393 So. 2d 1142, 1145 (Fla. 3d DCA 1981), applies with equal force in the context of summary judgment motions. See, e.g., Panzera, 198 So. 3d at 665 (purely speculative opinion testimony is not admissible evidence and cannot be relied on to create a material issue of fact to defeat summary judgment).

Here, the Homeowners' expert's opinion that the leak in the roof on July 17, 2013, was created "by strong wind and rain events that took place between June 29th and July 3rd, 2013" was based on his inspection of the subject roof. But he inspected the "damage" a year after the damaged roof was replaced. Nevertheless he asserted that during his inspection, "[t]he damages to the roof were observed in areas more vulnerable to wind gusts such as the intersection of the flat roof and inclined roof and along the roof ridge." Unless there somehow occurred a suspension of the general laws of physics and common human experience, one cannot normally observe "damages to the roof" after the damaged roof was replaced. De La Osa v. Wells Fargo Bank, N.A., 208 So. 3d 259, 264 (Fla. 3d DCA 2016) (en banc) ("A judge is not required to check his or her common sense in the robing room."). If there were some unusual and abnormal circumstances which would allow such observation, it was incumbent upon the expert to identify those

matters. Absent a description of the physical appearance of the wind damage or other explanation, Mr. Brizuela's expert opinion rests, at best, on conjecture and surmise. It lacks the required "discernible, factually-based chain of underlying reasoning" necessary for an expert opinion to be admissible in evidence. See, e.g., Samter, 393 So. 2d at 1145.

Similarly, the Homeowners' expert admits that using the wind speed from one location to determine the wind speed at a different location "is currently highly inaccurate." Yet he proceeded to do precisely what he said could not be done accurately. He hypothesized that wind gusts recorded more than three miles from the subject property two weeks before the loss prove that sustained winds at the subject property were the cause of a loss occurring two weeks later. Setting aside the discrepancy in the dates, this basis of his opinion also fails. An expert opinion that relies upon information that the expert himself testifies is untrustworthy does not qualify as "the product of reliable principles and methods" under the statute governing expert opinions. Alvarez v. All Star Boxing, Inc., 258 So. 3d 508, 513 (Fla. 3d DCA 2018).

For these reasons, the trial court was correct. The Homeowners' affidavits opposing summary judgment did not create a genuine issue of material fact to defeat Citizens' summary judgment motion. Accordingly, summary judgment was properly granted.

MILLER, J., concurs.

Yosvani Gonzalez & Yenisleidy Perez v. Citizens Property Ins. Corp.
Case No. 3D17-2609

12

SUAREZ, Senior Judge (dissenting).

I respectfully dissent.

The issue on appeal is one that trial courts face every day and have for years. The issue is whether competing expert affidavits create an issue of fact such that summary judgment cannot be entered. The trial court determined that the Homeowner's expert affidavit did not create a material issue of fact and granted summary judgment. To arrive at its decision, the trial court impermissibly entered the province of the jury by making findings of fact, weighing the competing evidence presented in the two affidavits and making determinations as to the credibility of the experts and the evidence presented. These are all issues for the finder of fact to determine at trial. They are not issues to be determined by the trial court at the summary judgment phase. I would, therefore, reverse the summary judgment and remand for further proceedings in the trial court.

It is undisputed that the Homeowners own property located in Hialeah, Florida and purchased a homeowners' insurance policy through Citizens, which was effective from June 3, 2013 through June 3, 2014. [4] At the summary judgment

---

[4] The policy at issue provides:

> COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES
>
> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property.

13

phase it was undisputed that there was water damage to the interior of the home caused by a leak in the roof. The entire issue in the case is whether, as Citizens argues, the leak was caused by wear and tear to the roof and, therefore, not a covered loss under the policy or, as the Homeowners argue, was caused by a physical loss to the roof that allowed water to enter and would, arguably, be covered by the policy.

On appeal, the Homeowners argue that the trial court erred in granting summary judgment in favor of Citizens. Specifically, the Homeowners assert that the evidence before the trial court showed that there was a genuine issue of material fact as to the cause of the loss, and that the trial court improperly weighed the evidence and assessed the credibility of the expert witnesses. I agree on both points.

"A trial court may enter a summary judgment when (1) there are no genuine issues of material fact, and (2) the moving party is entitled to judgment as a matter

---

. . . .
We do not insure, however, for loss:
. . . .
2. Caused by:
. . . .
h. Rain, snow, sleet, sand or dust to the interior of a building unless a covered peril first damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.
i. Any of the following:
(1) Wear and tear, marring, deterioration;

14

of law," Master Tech Satellite, Inc. v. Mastec N. Am., Inc., 49 So. 3d 789,790 (Fla. 3d DCA 2010). "If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper." Holland v. Verheul, 583 So. 2d 788, 789 (Fla. 2d DCA 1991). Significantly, in considering a motion for summary judgment, a trial court is not permitted to weigh material conflicting evidence or adjudge the credibility of the witnesses. Garcia v. First Cmty. Ins. Co., 241 So. 3d 254, 257 (Fla. 3d DCA 2018). But that is exactly what the trial court did.

Based upon my review of the record and affidavits filed in this case, I would find that there are genuine issues of material fact as to the cause of water damage to the Homeowners' property that preclude the entry of summary judgment. In its amended motion for summary judgment, Citizens argued that "the leakage and seepage [that entered the property] is due to the wear and tear, marring, and deterioration of the roof" rather than a covered peril. Citizens relied upon Brown's affidavit, in which he concluded that the "[t]he roof leak claimed in this matter . . . is the direct result of normal wear and tear of the roof system and the leak is not through a wind storm intrusion." In their memorandum of law in opposition to Citizens' amended motion for summary judgment, homeowners relied upon Brizuela's second affidavit in support of their assertion that the roof leak was

15

caused by a covered peril, i.e., exterior roof openings caused by "wind uplift." Specifically, homeowners relied upon Brizuela's statement in his affidavit that moisture entered the property through openings "created by strong wind and rain events that took place between June 29th and July 3rd, 2013. The strength of the winds during this period ranged from 34 up to 60 mph. These damages were observed inside the property when in a 2-day period more than 4 inches of rain fell on the property." The conflicting affidavits of Brown and Brizuela establish a genuine issue of material fact regarding the cause of loss. As a result, no summary judgment should have been entered. See id. at 258; Charles E. Burkett & Assocs., Inc. v. Vick, 546 So. 2d 1190, 1191 (Fla. 5th DCA 1989) (holding that conflicting affidavits created a genuine issue of material fact and that summary judgment should not have been entered).

The trial court impermissibly weighed the evidence and assessed the credibility of witnesses in granting Citizens' amended motion for summary judgment. In announcing its ruling, the trial court stated that it was "adopt[ing] and incorporate[ing] by reference" Citizens' argument that Brizuela's affidavit and report did not create a genuine issue of material fact as they were based upon an inspection conducted four years after the loss. Indeed, during the hearing, the trial court stated that "[m]y position is that why didn't [homeowners'] inspection take place sooner like [Citizens'] did, two days after the event and then nine months

after." The trial court further stated that an opinion based upon an inspection conducted two days or nine months after the alleged damage "has a higher degree of accuracy, at least for this court," than one that occurs four years later. Any issues as to the credibility and accuracy of Brizuela's opinion due to the timing of his inspection, however, are for the trier of fact, not the trial court in a summary judgment proceeding. Garcia, 241 So. 3d at 258 ("The consideration of the timing of Brizuela's inspection of the property in relation to that of [insurer's] engineer, however, goes to the credibility and weight of Brizuela's opinion regarding the cause of loss. It is well-established that issues of credibility and weight of the evidence are not appropriate in a summary judgment determination."); see also Hernandez v. United Auto. Ins. Co., 730 So. 2d 344, 346 (Fla. 3d DCA 1999) (stating that witness credibility "was a matter within the province of the trier of fact and not the court on a motion for summary judgment"); Juno Indus., Inc. v. Heery Int'l, 646 So. 2d 818, 822 (Fla. 5th DCA 1994) ("The trial court may not determine factual issues nor consider either the weight of the conflicting evidence or the credibility of witnesses in determining whether a genuine issue of material fact exists in a summary judgment proceeding.").

In the opinion, the majority determines factual issues, weighs the conflicting evidence and determines credibility of the witnesses. Again, these are issues for

17

the trier of fact and not for the summary judgment phase. In referring to the

Homeowner's affidavit, the majority opinion states:

> Here, the Homeowners' expert's opinion that the leak in the roof on July 17, 2013, was created "by strong wind and rain events that took place between June 29th and July 3rd, 2013" was based on his inspection of the subject roof. But he inspected the "damage" <u>a year after the damaged roof was replaced</u>. Nevertheless he asserted that during his inspection, "[t]he damages to the roof were observed in areas more vulnerable to wind gusts such as the intersection of the flat roof and inclined roof and along the roof ridge." Unless there somehow occurred a suspension of the general laws of physics and common human experience, one cannot normally observe "damages to the roof" after the damaged roof was replaced. . . . If there were some unusual and abnormal circumstances which would allow such observation, it was incumbent upon the expert to identify those matters. Absent a description of the physical appearance of the wind damage or other explanation, Mr. Brizuela's expert opinion rests, at best, on conjecture and surmise. It lacks the required "discernible, factually-based chain of underlying reasoning" necessary for an expert opinion to be admissible in evidence.

The majority then goes on to state:

> Similarly, the Homeowners' expert admits that using the wind speed from one location to determine the wind speed at a different location "is currently highly inaccurate." Yet he proceeded to do precisely what he said could not be done accurately. He hypothesized that wind gusts recorded more than three miles from the subject property two weeks before the loss prove that sustained winds at the subject property were the cause of a loss occurring two weeks later. Setting aside the discrepancy in the dates, this basis of his opinion also fails. An expert opinion that relies upon information that the expert himself testifies is untrustworthy does not qualify as "the product of reliable principles and methods" under the statute governing expert opinions."

18

These are the types of arguments an attorney would make to the finder of fact in the hope of convincing the finder of fact that in weighing the conflicting expert evidence (one expert opines the water damage is due to wear and tear and the other expert opines it is due to uplift caused by wind), the expert's opinion based on these facts is not as reliable as the opposing opinion based on the facts presented by the opposing expert. In other words, the majority, as did the trial court, is looking at these facts and is determining that these facts are not reliable and do not support the expert's opinion and, therefore, the expert is also not credible. Again, the weighing of conflicting evidence and the determination of the credibility of the witness are issues to be determined by the trier of fact and are not, as has been done here and by the trial court, issues to be determined at the summary judgment stage.

For these reasons I would reverse and remand for further proceedings.