# Third District Court of Appeal

## State of Florida

Opinion filed August 18, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-2214
Lower Tribunal No. 16-9441
_____

**Carlos Vega,**
Appellant,

vs.

**Safepoint Insurance Company,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Pedro P. Echarte, Jr., Judge.

Giasi Law, P.A., Melissa A. Giasi and Erin M. Berger (Tampa), for appellant.

Cole Scott & Kissane, P.A., and Alexandra Valdes, for appellee.

Before LOGUE, GORDO and LOBREE, JJ.

GORDO, J.

Carlos Vega appeals the trial court's order granting Safepoint Insurance Co.'s motion for summary judgment and subsequent entry of final judgment. We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A). Vega argues his expert's affidavit in opposition to summary judgment and other record evidence were sufficient to create a genuine issue of material fact as to the cause of the property damage, precluding the entry of summary judgment. We agree, reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Vega purchased the subject property in 2005. Prior to moving into the property in 2007, he renovated it, which included painting, replacing doors, installing impact windows, and redoing the kitchen and a bathroom. At that time, the roof was in good condition.

On July 3, 2015, Vega's home experienced a windstorm, which knocked down a large tree in front of his home. As a result of this windstorm, water came pouring in through the ceilings and walls of several rooms in his house from the roof. Prior to this windstorm, he had never experienced any water coming into his property or issues with his roof.[1]

---

[1] Vega testified to this and other facts at his deposition.

2

The day after the windstorm, Vega called a remediation company that came out to the property, cleaned up, dried out the water, and placed a tarp on the roof. He also contacted a public adjusting company, Contender Claims ("Vega's Public Adjuster"), which sent someone out to assess the damage and prepare an estimate. Vega's Public Adjuster inspected the inside of the property and did not actually climb on to the roof at any point. He also did not know whether there had been any wind damage to the roof or a wind event preceding the loss because he had not performed an inspection of the roof and had not been there on the date of loss. Based on his inspection of the property, Vega's Public Adjuster determined that the "interior water damage . . . was indicative of water coming from the outside onto the inside."[2]

The property was insured by Safepoint from April 28, 2015, to April 28, 2016. As such, Vega filed a claim with Safepoint and provided his Public Adjuster's estimate of damages. Safepoint inspected the property and denied coverage based on its determination that there was no opening in the roof caused by a covered peril, and the damage was the result of long-term repeated seepage due to wear and tear and deferred maintenance.

---

[2] Vega's Public Adjuster testified to this at his deposition.

3

Following the denial of coverage, Vega filed suit for breach of contract, claiming the damage was the result of a one-time windstorm and covered under the policy. Safepoint answered, asserting various affirmative defenses, including that the policy did not afford coverage based a provision stating, in relevant part, as follows:

> **PERILS INSURED AGAINST COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**
>
> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. This includes the peril of "catastrophic ground cover collapse" as provided in Part A. below. However, we do not insure loss:
> . . .
> 2. Caused by:
> . . .
> i. Rain, snow, sleet, sand or dust to the interior of a building unless a covered peril first damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.
> j. (1) wear and tear, marring deterioration.

That provision goes on to state a covered loss is any loss "not excluded or otherwise excepted."

Safepoint eventually filed a motion for summary judgment, arguing that the alleged damage was excluded from coverage. In support of its motion, Safepoint filed several documents and affidavits. One such affidavit was of

4

Neil A. Greenspoon, P.E., of Rimkus Consulting Group, Inc. ("Safepoint's Expert"), which prepared a report based on its evaluation of the property. Safepoint's Expert opined that the loss was not covered because it was the result of natural age-related material expansion and long-term exposure to moisture, and that there had been no significant wind events in the months prior to and on July 3, 2015. Safepoint also designated Vega's deposition testimony and Vega's Public Adjuster's deposition testimony as summary judgment evidence.

Vega opposed the motion, contending there was a genuine issue of material fact as to whether the loss to Vega's property was caused by a one-time windstorm event resulting in an opening in the roof or was the result of a long-term, age-related exposure to moisture. He filed an affidavit and report from his expert, Rafael Leyva ("Vega's Expert"), in support of his position. Vega's Expert obtained a bachelor's in architecture in 1993 and has worked in construction, in various capacities, since then. He is presently a licensed general, roofing, and plumbing contractor, as well as an independent insurance adjuster.

He inspected Vega's property on September 23, 2019, after the roof had already been replaced and after some of the interior repairs had taken place. Thus, to form his opinions regarding the property's condition closer

5

to the time of the incident, Vega's Expert examined numerous photographs of the roof taken and relied on by Safepoint's Expert. Specifically, one of the photographs taken by Safepoint's Expert had a notation that the roof tile was detached and cracked. Vega's Expert also reviewed Safepoint's denial letter, the engineer's report, and the water mitigation package.

Based on his review of those items and his twenty-six years of experience at the time, Vega's Expert opined "that the damages [were] a result of [a] one-time event which permitted water to compromise the roofing material and damage the interior of the home." He reached this conclusion based on several things, including the condition of the roof membrane near the time of the incident, the lack of fungal growth, and the signs of forced physical damage. More particularly, he stated that moisture could not have been coming in for several months because there would have been extensive fungal growth, which was not present. He also opined that the wind data relied on by Safepoint's Expert was not from the subject property, could not explain what was happening there and failed to account for many other variables that could have affected the roof. Finally, he stated that nothing in Safepoint's Expert's photographs showed that the roof's membrane was deteriorated in any way, which would be expected had the membrane been repeatedly exposed to moisture.

6

The trial court granted Safepoint's motion and entered judgment in its favor, finding no genuine issue of material fact as to whether a windstorm damaged Vega's home by causing an opening in the roof.

**LEGAL ANALYSIS**

"[A] motion for summary judgment is not a trial by affidavit or deposition. Summary judgment is not intended to weigh and resolve genuine issues of material fact, but only identify whether such issues exist." Gonzalez v. Citizens Prop. Ins. Corp., 273 So. 3d 1031, 1035 (Fla. 3d DCA 2019) (quoting Perez-Gurri Corp. v. McLeod, 238 So. 3d 347, 350 (Fla. 3d DCA 2017)). "If there is disputed evidence on a material issue of fact, summary judgment must be denied and the issue submitted to the trier of fact." Id. (quoting Perez-Gurri Corp., 238 So. 3d at 350). It is well-established that the party moving for summary judgment has the initial burden to present evidence supporting "the claimed non-existence of a material issue." Id. at 1036 (quoting Harvey Bldg., Inc. v. Haley, 175 So. 2d 780, 783 (Fla. 1965)). The burden then shifts to the opposing party to "come[] forward with some evidence which will change the result—that is, evidence sufficient to generate an issue on a material fact." Id. (quoting Harvey Bldg., Inc., 175 So. 2d at 783).

7

To demonstrate the existence of such an issue, the affidavits filed in opposition "must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein." Id. (quoting Fla. R. Civ. P. 1.510(e)).[3] If the affidavits "show evidence of a nature that would be admissible at trial . . . any questions regarding relative credibility or weight of that evidence compared to other evidence cannot be resolved on summary judgment but must be left for the trier of fact." Id. (citation omitted).

Upon review of the competing expert affidavits, their respective reports and Vega's sworn testimony, we conclude that a genuine issue of material fact remains as to what damaged Vega's roof and whether an opening in the roof was created by a covered peril—a windstorm. Safepoint and Vega filed competing expert affidavits and reports as to whether the loss to Vega's property was a one-time event that caused an opening in the roof. Safepoint's Expert's report specifically stated that the damage was due to

---

[3] Gonzalez quoted from and applied a prior version of Rule 1.510. We note that the standard for motions for summary judgment has since been amended. That amendment, however, applies to motions pending as of and considered after the change became effective on May 1, 2021. See United Auto. Ins. Co. v. Progressive Rehab. & Orthopedic Servs., LLC, No. 3D21-0108, 2021 WL 3072936, at *2 n.4 (Fla. 3d DCA July 21, 2021). This case, like Gonzalez, is governed by the prior version of the Rule.

8

age-related natural material expansion and "the result of multiple exposures to moisture over a period of at least several years," and Vega's Expert's report directly contradicted that by stating the loss resulted from a one-time windstorm, "which permitted water to compromise the roofing material and damage the interior of the home."

In Gonzalez, this Court affirmed the trial court's grant of summary judgment based on its conclusion that the homeowner's expert's affidavit failed to create a genuine issue of material fact. Gonzalez, 273 So. 3d at 1038. The homeowner's expert in that case stated only that his opinion was based on his own inspection of the property, which took place a year after the damaged roof had been replaced. Id. at 1034–35, 1037. Based on that inspection alone, he averred that he observed the areas of the roof that had been damaged by the wind event. Id. In contrast, in this case, Vega's Expert's opinion, as set forth in his report, was not based solely on his inspection after the roof's replacement. Rather, it was predicated upon his review of photographs taken during Safepoint's inspection of the roof—taken by Safepoint's Expert—as well as Safepoint's Expert's report and other relevant documentation.

Vega's Expert's opinion was appropriately based on his experience in the field, together with his review of the relevant documentation in this case

and his own inspection of the property. See, e.g., United Auto. Ins. Co. v. Progressive Rehab. & Orthopedic Servs., LLC, No. 3D21-0108, 2021 WL 3072936, at *4 (Fla. 3d DCA July 21, 2021) (citing § 90.702, Fla. Stat. (2020)). Vega's Expert specifically pointed to one of the photographs[4] in Safepoint's Expert's report as support for his conclusion that there was a condition on the roof that had been created by a windstorm. This photograph showed, as Safepoint's Expert himself described the image, that the roof tile was detached and cracked. This tile was already detached and cracked when Safepoint's Expert lifted it to further examine and photograph it. We find this photograph to be sufficient evidence—provided, no less, by Safepoint's own Expert—to rebut Safepoint's assertion that there was no opening in Vega's roof.

We also note that Vega's Expert opined it was clear from this photograph that the roof's membrane was in good condition. Vega's Expert observed that the membrane clearly still had granulation, and that the portion of granulation that was missing was due to forced physical damage from the

---

[4] While the dissent notes that the only photo Vega's Expert used was one of a roof tile being moved, that photo is but one of several he reviewed and considered in order to form his opinions. It is axiomatic that an expert may rely on any facts or data "perceived by, or made known to, the expert at or before the trial" in order to form his opinions. § 90.704, Fla. Stat. (2020).

10

wind that ripped the tile off, not deterioration.[5]  This, again, is different from

Gonzalez, where it was undisputed that the membrane was well worn and

cracked, and there were portions that were unsealed, allowing water to leak

into the property.  Gonzalez, 273 So. 3d at 1034 n.1.

The dissent would require Vega to prove his case, but that is not proper

at this stage of the proceedings.  The opposing party is required only to

demonstrate that a genuine issue of material fact remains, leaving questions

for the trier of fact.  See id. at 1035 ("Summary judgment is not intended to

weigh and resolve genuine issues of material fact, but only identify whether

such issues exist." (citation omitted)).  Vega's Expert's conclusions based on

his experience and review of the record in combination with Vega's

deposition testimony regarding the date of loss were sufficient to create a

---

[5] The dissent posits, "[i]f the membrane was in 'good condition,' where was the opening caused by the windstorm event?"  The good condition of the membrane, however, is a pure rebuttal of Safepoint's position that the roof had long-term deterioration and Vega had been allowing seepage into the property over time.  This unresolved issue is precisely the type of question properly left for a trier of fact to weigh the evidence presented and assess the credibility of those testifying at trial.

genuine issue of material fact.  Thus, summary judgment was inappropriate at this juncture of the proceedings.[6]

Reversed and remanded.

LOBREE, J., concurs.

---

[6] Nothing in this opinion shall prevent either party from seeking summary judgment at a future date, with a fully developed record, under the new summary judgment standard.

LOGUE, J., dissenting.

Under the insurance policy and pleadings at issue, the claim of Mr. Vega (the insured), against Safepoint Insurance Company, (his insurer), fails unless Vega can prove the property damages at issue resulted from a July 3, 2015 windstorm that caused "an opening in a roof or wall." After discovery, the Insurer moved for summary judgment on the basis that there was no evidence upon which a jury could make such a finding.

The summary judgment record reveals the following. The Insurer's experts inspected the roof three months after the incident and found considerable wear and tear and prior repairs, but no opening in the roof. The Insured never inspected the roof. The Insured's public adjustor inspected the property in 2015, but, strangely, did not inspect the roof.[7] The Insured's expert inspected the roof, but only in 2019—four years after the roof was replaced.

---

[7] The Insured's public adjustor testified he could not remember whether the Insured told him of a windstorm that damaged the roof at the time, but he would normally have inspected the roof and included an estimate of damage to the roof if the Insured had told him of a windstorm event.

The Insured's expert's entire opinion is based on his analysis of only one of the photographs taken by the opposing expert in 2015 before the roof was replaced. The photograph shows a small part of the roof where the Insurer's expert had removed a cracked tile. While the Insured's expert observes that the photograph shows "part of the mortar [that attaches the tile to the roof] had been ripped off," he attributes this to "some type of wind event" (rather than the action of the photographer in removing the tile) in consideration that "this <u>could be</u> the same condition in other section[s] of the roof" (emphasis added). This language strikes me as inconclusive and indeterminant.

At the same time, from the same photograph, the Insured's expert opines the "granulation" of the roof's membrane where the tile was removed is a "sign that the membrane is in good condition." These observations and opinions do not appear to support any inference that there was an opening in the roof underneath that tile. Indeed, it would seem to suggest the opposite. If the membrane was in "good condition," where was the opening caused by the windstorm event? The absence of any explanation or chain of reasoning in this regard is dispositive of this case. An expert's supposition or belief is not sufficient to create a genuine issue of material fact. <u>Gonzalez v.</u>

14

Citizens Prop. Ins. Corp., 273 So. 3d 1031, 1037 (Fla. 3d DCA 2019), rev. denied, 2019 WL 6249341 (Fla. Nov. 22, 2019).

Given this record, the trial court was eminently correct to grant summary judgment. See The Fla. Bar v. Greene, 926 So. 2d 1195, 1200 (Fla. 2006). ("Summary judgment is designed to test the sufficiency of the evidence to determine if there is sufficient evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings."); Harvey Bldg., Inc. v. Haley, 175 So. 2d 780, 782–83 (Fla. 1965) ("If the moving party presents evidence to support the claimed non-existence of a material issue, he will be entitled to a summary judgment unless the opposing party comes forward with some evidence which will change the result—that is, evidence sufficient to generate an issue on a material fact."). For these reasons, I respectfully dissent.