# Third District Court of Appeal

## State of Florida

Opinion filed January 11, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1084
Lower Tribunal No. 13-17885
_____

**Chakra 5, Inc., et al.,**
Appellants,

vs.

**The City of Miami Beach,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Mark Blumstein, Judge.

Kozyak Tropin & Throckmorton, Javier A. Lopez, Tal J. Lifshitz and Michael R. Lorigas, for appellants.

Robert F. Rosenwald, Jr.; Carlton Fields, P.A., Alan Rosenthal, Enrique Arana, Natalie J. Carlos and David A. Karp, for appellee.

Before FERNANDEZ, C.J., and EMAS, and MILLER, JJ.

FERNANDEZ, C.J.

Plaintiffs Chakra 5, Inc., 1501 Ocean Drive LLC, and Haim Turgman (collectively, plaintiffs) appeal the trial court's Final Judgment entered in favor of defendant City of Miami Beach (the City) after the trial court granted the City's summary judgment motion on Counts I and II of plaintiffs' amended complaint. Concluding that that there were no genuine issues of material fact and that the City was entitled to summary judgment as a matter of law, we affirm.

In an effort to establish an entertainment venue in the City of Miami Beach, Haim Turgman (Turgman) organized a limited liability company, 1501 Ocean Drive LLA (1501), to hold title to a 25,000 square foot entertainment complex comprised of four condominium units at 1501 Ocean Drive, Miami Beach, Florida 33139 (the club property). Turgman also incorporated Chakra 5, Inc. (Chakra 5) to be the operational entity for the club. The Chakra nightclub opened in December 2006.

Plaintiffs alleged below that after the club's opening, the City's code inspectors began a campaign of harassment to close the club and extort bribes from plaintiffs. Appellants claim that from the club's opening in December 2006 to May 20, 2009, City inspectors conducted successive unjustified inspections, harassed Turgman and the club, and issued citations for alleged violations. After May 20, 2009, plaintiffs allege that the City cited

2

them five times for violations, inspectors continued to harass them, and on June 3, 2011, one of the city's code inspectors solicited a bribe from Turgman. Turgman reported this to the FBI, who paid the bribes on Turgman's behalf in an undercover sting operation.

Previously, in June 2007, to purchase the property for the club, plaintiffs had entered into a balloon promissory note for the sum of $4,000,000. When they failed to pay the note on maturity, foreclosure proceedings began and a foreclosure judgment was entered in May 2012.

On May 20, 2013, plaintiffs filed a complaint against the City and the inspectors for violations of substantive and procedural due process rights under 42 U.S.C. § 1983 for alleged actions occurring from June 2006 through May 2012. In October 2015, plaintiffs filed their amended complaint which alleged two counts against the City for violations under 42 U.S.C. § 1983. They alleged the City had a custom or practice of harassing business owners by conducting excessive code inspections, issuing unwarranted citations, and soliciting bribes. Plaintiffs sought lost profits but eventually only sought to recover the value of the property that was foreclosed, almost $7 million. The City moved to dismiss the amended complaint and the trial court dismissed it in its entirety on October 17, 2016.

On appeal, this Court partially reversed the dismissal with prejudice of appellants' procedural due process claims. In <u>Chakra 5, Inc. v. City of Miami Beach</u>, 254 So. 3d 1056, 1070 (Fla. 3d DCA 2018), this Court affirmed the dismissal of all substantive due process claims and all claims based on alleged injuries occurring before May 20, 2009. Regarding the procedural due process claims allegedly occurring after May 20, 2009, this Court held that:

> [T]his matter came before the trial court via a motion to dismiss, and the City's argument relies too much on inferences drawn from silences in the Appellants' amended complaint and discovery responses outside the four corners of that pleading, which are more appropriately considered via summary judgment. We therefore conclude that the trial court erred in dismissing with prejudice Appellants' claims for violations of procedural due process arising from those injuries that are not time barred. We express no opinion regarding the merits of those claims, nor do we express any opinion regarding Appellants' ability, on remand to amend their pleading with respect to those particular claims.

<u>Id.</u> On remand, plaintiffs never amended their complaint.

After discovery and procedural history not relevant to this opinion, the City moved for summary judgment. The City argued that plaintiffs could not prove a procedural due process violation under <u>Monell v. Department of Social Services of New York</u>, 436 U.S. 658, 694 (1978). The City also argued that summary judgment should be granted because plaintiffs' damages were

4

not recoverable as a matter of law and because Turgman and Chakra lacked standing to claim damages resulting from the foreclosure of the club property.

On March 30, 2021, the trial court entered its Order Granting Defendant City of Miami Beach's Motion for Summary Final Judgment. In its order, the trial court ruled that 1) the City had "constitutionally-adequate procedures to address the alleged wrongs"; 2) plaintiffs' right to procedural due process did not require the City "to prevent the alleged harassment and bribes"; 3) plaintiffs' could not "establish liability under Monell for rogue employees' actions"; 4) plaintiffs' damages are not recoverable; 5) Turgman and Chakra lacked standing "to claim damages resulting from the foreclosure of the club property"; and 6) Turgman and 1501 lacked standing to assert procedural due process violations against the City because only Chakra was allegedly denied due process as a result of the citations and alleged harassment. On April 7, 2021, the trial court entered its Final Judgment for the City. This appeal followed.

On appeal from an order granting final summary judgment, the standard of review is *de novo*. Volusia Cty v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Because the trial court entered summary judgment on April 7, 2021, the amended summary judgment rule

5

effective May 1, 2021 does not apply here. <u>United Auto. Ins. Co. v. Progressive Rehab.</u>, 324 So. 3d 1006, 1008 n. 4 (Fla. 3d DCA 2021). Thus, under the summary judgment standard in effect at the time the trial court entered its order:

> A movant is entitled to summary judgment if the pleadings and the summary judgment evidence show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). In reviewing the summary judgment ruling, we must consider the evidence in the light most favorable to the nonmoving party, and if the record raises the slightest doubt that an issue might exist, we must reverse the summary judgment.

<u>Rodriguez v. Avatar Prop. & Cas. Ins. Co.</u>, 290 So. 3d 560, 562 (Fla. 2d DCA 2020) (quoting <u>Buck-Leiter Palm Av. Dev., LLC v. City of Sarasota</u>, 212 So. 3d 1078, 1081 (Fla. 2d DCA 2017)).

Plaintiffs first contend that the trial court erred in misapplying the summary judgment standard by applying "the more stringent federal summary judgment standard." The trial court, in fact, followed the correct standard and applied the one applicable in Florida before the new standard became effective on May 1, 2021. <u>United Auto. Ins. Co. v. Progressive Rehab. & Orthopedic Servs., LLC</u>, 324 So. 3d 1006, 1008 n. 4 (Fla. 3d DCA 2021). This standard requires the non-moving party to present sufficient evidence to create a genuine issue of material fact. <u>Landers v. Milton</u>, 370

6

So. 2d 368, 370 (Fla. 1979). The trial court stated in its order granting the

City's motion for summary judgment:

> "[T]he only proper question when deciding summary judgment is whether 'there is **sufficient evidence** favoring the nonmoving party for a jury to return a verdict for that party." Mobley v. Homestead Hospital, Inc., 291 So. 3d 987, 993-994 (Fla. 3d DCA 2019) (Logue, J., concurring) (emphasis added) (noting a summary judgment motion is similar to a "pre-trial" directed verdict motion); see also The Fla. Bar v. Greene, 926 So. 2d 1195, 1200 (Fla. 2006) (noting summary judgment "is designed to test the sufficiency of the evidence to determine if there is sufficient evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings.") . . . .

> Assuming that the non-moving party presents "sufficient evidence" to justify a trial on the claims or defenses, summary judgment should be granted where there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law." See Fla. R. Civ. P. 1.510; Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). "A summary judgment motion triggers evidentiary burdens on both the moving and opposing party." Delgado v. Laundromax, Inc., 65 So. 3d 1087, 1088 (Fla. 3d DCA 2011). "[O]nce [the movant] tenders competent evidence to support his motion, the opposing party must come forward with counterevidence sufficient to reveal a genuine issue. It is not enough for the opposing party merely to assert that an issue does exist." Landers v. Milton, 370 So. 368, 370 (Fla. 1979).

(emphasis in original). Plaintiffs contend that the trial court erred in drawing

every possible inference against them and that the trial court was required

to accept as true Turgman's statement in his affidavit that there "was never

a night where the Club was open and was not harassed with inspections."

Regarding statements in affidavits, "The focus is on whether the affidavits

7

show evidence of a nature that would be admissible at trial . . . ." Gonzalez v. Citizens Prop. Ins. Corp., 273 So. 3d 1031, 1036 (Fla. 3d DCA 2019).

The record on appeal does not support the statement Turgman made in his affidavit that the club was inspected each night it was open. Plaintiffs could not provide the dates on which the club was open. They could not provide the dates when the alleged inspections occurred, nor could they provide the names of the inspectors or the City officials who allegedly came by each day or night to inspect the club property. They also could not provide any records reflecting contemporaneous daily/weekly operations for the club during the period from June 2009 through the time it closed in April 2012. In addition, Turgman testified in his deposition that by June 2011, the alleged harassment had stopped, and the club was operating without any harassment, inspections, citations, or fines.

Furthermore, we agree with the City that the statement in Turgman's affidavit is irrelevant to plaintiffs' procedural due process claim. In our analysis of plaintiffs' procedural due process claim in the next portion of this opinion, it is clear that if harassing inspections were occurring, plaintiffs do not dispute that they had remedies. They could have filed an internal complaint at various different offices within the City, such as with a department supervisor or an assistant City manager; or they could have filed

8

a complaint with the state attorney's corruption unit or the City police's internal affairs department. Thus, summary judgment in favor of the City was warranted on this issue because adequate process was provided to plaintiffs, and plaintiffs did not present evidence to dispute this fact.

Turning to plaintiffs' procedural due process issue, they contend that the trial court erred in finding they had not established its procedural due process claim. To establish a 42 U.S.C. § 1983 claim for a procedural due process violation against a municipality, plaintiffs must establish: "'(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'" Chakra 5, Inc., 254 So. 3d at 1070. In addition, a plaintiff has to show that the property deprivation was a result of: (1) an express policy of the local government body; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law"; or (3) the actions of an official with final policymaking authority. Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966 (11th Cir. 2002); Brown v. City of Ft. Lauderdale, 923 F. 2d 1474, 1480-81 (11th Cir. 1991). Also, "a local government may not be sued under section 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Thus, "essential to recovery in a Section 1983 action against

9

a municipality is a showing that the alleged constitutional deprivation flowed from an official policy or custom of the municipality, and that the policy or custom was 'the moving force of the constitutional violation.'" City of Miami v. Harris, 490 So. 2d 69, 71 (Fla. 3d DCA 1985) (citing Monell, 436 U.S. at 694-95 (1978)). Consequently, the remaining issues for the trial court to decide on summary judgment were whether the City provided plaintiffs constitutionally-adequate procedures to address any property deprivations caused by City employees during the period from May 20, 2009 to June 2011, and whether the City was deliberately indifferent toward the process for addressing any alleged wrongful conduct by the City's employees.

Plaintiffs allege three reasons for their procedural due process claim that occurred after May 20, 2009. They claim: 1) the City issued five unjustified citations; 2) the City conducted harassing inspections that did not result in a ticket, fine, or citation; and 3) the City's employees solicited illegal bribes. First, regarding property deprivation without constitutionally adequate pre-deprivation process, plaintiffs allege code inspectors issued Chakra five "unjustified" citations after May 20, 2009, including the following:  November 1, 2009: 11 fire code violations; April 19, 2010: unlawful flyers; May 30, 2010: displaying a prohibited advertisement; March 8, 2011: littering; and March 26, 2011: failure to maintain fire alarm. The evidence showed, and the trial

10

court held in its order, that none of these citations resulted in property deprivation. Through the City's appeal process, plaintiffs had the right to appeal first to a special master and then to the circuit court. See Miami Beach Code Sec. 30-71(b); 30-77. In addition, City of Miami Beach Code Section 58-233 provides for a hearing before a special master on an issued citation if a person refused to allow inspectors onto private property for an inspection. Any person not agreeing with the decision of the special master could appeal to the circuit court for review by petition for writ of certiorari. Thus, plaintiffs had the ability to refuse the inspectors' entry to the club and request a hearing before a special master to challenge the inspection. Accordingly, the City had "constitutionally sufficient pre-deprivation remedies" available to plaintiffs.

Furthermore, in the case of these five aforementioned violations, plaintiffs corrected the violations, the violations became moot, or plaintiffs appealed them to a special master:

-The November 1, 2009 fire code violations: Turgman did not appeal these because he testified he "maintain[ed] everything on the list and that's it. There was no more violation."

-The April 19, 2010 citation for unlawfully distributing flyers was a written warning, and no fine was assessed.

-The May 30, 2010 citation for displaying a prohibited advertisement requested that an unlawful banner be removed from the sidewalk. No fine was assessed.

11

-The March 8, 2011 citation for littering: Plaintiffs contested this citation, and the special master reduced the fine. Plaintiffs had the right to appeal the special master's decision to the circuit court, but they did not.

-The March 26, 2011 citation for failure to maintain the fire alarm became moot because Turgman fixed and "maintained the system" right after he was given the citation.

Next, plaintiffs allege they were deprived of their property due to the alleged harassment by the inspectors that did not result in a written ticket, fine, or inspection when inspectors allegedly harassed the club by showing up and speaking to patrons before they went into the club, shutting down the club, or creating non-existent code violations. However, in his affidavit, Turgman does not discuss any allegedly harassing inspections that took place after May 20, 2009. In addition, as previously discussed, Turgman could not give the dates or times of when the inspections or visits occurred, nor the names of the inspectors or City officials. Turgman was not present when City officials spoke to club patrons about the club and could not identify the patrons, City officials, or dates when these events allegedly occurred. And as the City correctly contends, plaintiffs had the ability to report any harassment and to file a complaint with a department supervisor, an assistant City manager, the internal affairs office of the City's police department, or the state attorney's office. Plaintiffs did not do this.

12

In reference to the bribes, the United States Supreme Court held in Hudson v. Palmer, 468 U.S. 517, 533 (1984) that "that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." See also Parratt v. Taylor, 451 U.S. 527 (1981). Thus, the trial court, citing to Hudson and Parratt, was correct in ruling in its order that:

> [T]he due process clause requires only that procedures be available to persons to seek redress for harms; it does not require internal government policies to prevent crime or corruption. It is well-settled that intentional or negligent deprivations of property by a state employee do not give rise to a due process claim if a meaningful post-deprivation remedy is available.

Further, plaintiffs never paid any of the bribes that were solicited by the City inspectors from June 2011 to December 2011. Plaintiffs went to the FBI to report what had happened. The FBI then set up a sting operation and paid the bribes to the City's inspectors. During this time, plaintiffs admitted that any alleged harassment by City code inspectors ceased. Specifically, the harassment ended by June 30, 2011. When the City learned of the bribes, they fired the inspectors. As a result of the FBI's sting operation, the inspectors were arrested, convicted, and went to prison.

13

Plaintiffs also contend that the City was required to implement policies to prevent the inspectors' unjustified interference with plaintiffs' club operations. However, this is not what the due process clause requires. As previously noted, the trial court correctly cited to Hudson and Parratt in its order and stated that the "due process clause requires only that procedures be available to persons to seek redress for harms; it does not require internal government policies to prevent crime or corruption." Accordingly, to show that a pre-deprivation hearing was required under Parratt/Hudson to prevent the solicitation of bribes, plaintiffs had to show it was possible to have a pre-deprivation hearing before the unlawful bribes were solicited. Parratt, 451 U.S. at 541; Hudson, 468 U.S. at 535. As the United States Supreme Court stated in Zinermon v. Burch, 494 U.S. 113, 129 (1990), "[i]t is difficult to conceive of how the State could provide a meaningful hearing" before the City's officers harassed or bribed the club. As the City correctly contends in citing to Parratt, even if the City knew that some of its employees might harass or bribe or act in a corrupt manner, "it certainly 'cannot predict precisely when the loss will occur.'" Zinermon, 494 U.S. at 136 (quoting Parratt, 451 U.S. at 541). Because criminal acts such as these are "random and unauthorized"…, "the State cannot be required constitutionally to do the impossible[.]" Id. at 29. Furthermore, federal case law indicates the doctrine

14

in Paratt/Hudson has been applied to conclude that pre-deprivation hearings are not feasible when a state actor solicits bribes. Hall v. Fed. Bureau of Prisons, 2016 WL 4500881, at *2 (E.D. Mich. Aug. 29, 2016). "As long as an adequate postdeprivation proceeding exists to satisfy the requirements of the due process clause, there is no valid procedural due process claim." Id.

Plaintiffs claim that there were no post-deprivation remedies available to them for the City's alleged harassment. However, even if plaintiffs had shown they were deprived of their property without adequate pre-deprivation process, the City had post-deprivation remedies available to plaintiffs that were sufficient as a matter of law. As previously discussed, plaintiffs had the opportunity to report any alleged harassment by inspectors to a department supervisor, an assistant City Manager, or the internal affairs department of the City's police department, which they did not do.

In response to the City's suggestion that plaintiffs could also have filed for injunctive relief to remedy any alleged harassment, plaintiffs argue that injunctive relief would not be adequate and that administrative officials cannot award damages. However, "[p]rocedural due process requires only an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Bush v. Sec'y, Fla. Dep't of Corr., 888 F.3d 1188, 1196 (11th Cir. 1991) (citations omitted). See also Parratt, 451 U.S. at 544 ("Although the

15

state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process.").

Finally, plaintiffs contend that the City is liable for its deliberate indifference to corruption. However, plaintiffs did not offer any evidence, as required under Monell, that the City acted with "deliberate indifference" to procedural due process violations or that the City caused the constitutional violation. The only constitutional claim that plaintiffs are permitted to bring after this Court's 2018 decision in Chakra 5 is their alleged procedural due process violation claim. As the trial court correctly held in its order, "Plaintiffs' constitutional claim is an alleged procedural due process violation, not bribery. Accordingly, the remaining inquiry is, at best, as to any deliberate indifference by the City towards the process for addressing alleged wrongful code violations and harassment by City employees." (emphasis in original). Thus, plaintiffs' claims and the evidence to support their claims must focus solely on the process that was available to plaintiffs to remedy the alleged property deprivation plaintiffs claim was caused between May 20, 2009 and June 2011 by City inspectors. And in the record before us, plaintiffs did not offer any evidence that the City acted with deliberate indifference to plaintiffs'

procedural due process rights. Moreover, "[T]he law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior." Griffin v. City of Opa-Locka, 261 F. 3d 1295, 1307 (11th Cir. 2001); Monell, 436 U.S. at 663.

In sum, because there were no genuine issues of material fact remaining as to plaintiffs' inability to demonstrate that their procedural due process rights were violated, we affirm the trial court's Final Judgment based on its order granting the City's motion for summary judgment.[1]

Affirmed.

---

[1] Because plaintiffs failed to present evidence of a procedural due process violation, we do not address their damages argument.